UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>   vs.<br><br>LENDER PROCESSING SERVICES, INC., JEFFREY S. CARBIENER, LEE A. KENNEDY, and FRANCIS K. CHAN,<br><br>                   Defendants. | Case No. 3:10-cv-01073-TJC-JBT<br><br>Honorable Timothy J. Corrigan |
| SOUTHWEST OHIO DISTRICT COUNCIL OF CARPENTERS, Individually and On Behalf of All Others Similarly Situated,<br>                   Plaintiff,<br><br>   vs.<br><br>LENDER PROCESSING SERVICES, INC., JEFFREY S. CARBIENER, LEE A. KENNEDY, and FRANCIS K. CHAN,<br><br>                   Defendants. | Case No. 3:11-cv-00033-TJC-JBT<br><br>Honorable Timothy J. Corrigan |

**MOTION OF BALTIMORE COUNTY EMPLOYEES'
RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT
AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL,
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

MOTION ........................................................................................................ 1

MEMORANDUM OF LAW ........................................................................... 2

PRELIMINARY STATEMENT ..................................................................... 2

FACTUAL BACKGROUND .......................................................................... 4

ARGUMENT .................................................................................................. 7

      I.     THE RELATED ACTIONS
            SHOULD BE CONSOLIDATED ........................................... 7

      II.    BALTIMORE COUNTY SHOULD
            BE APPOINTED LEAD PLAINTIFF ................................... 8

            A.     The PSLRA Standard for Appointing Lead Plaintiff ..................... 8

            B.     Baltimore County Is the "Most Adequate Plaintiff" .................... 10

                   1.     Baltimore County Has Satisfied the
                           PSLRA's Procedural Requirements .................................. 10

                   2.     Baltimore County Has the Largest
                           Financial Interest in the Outcome of the Action .............. 10

                   3.     Baltimore County Satisfies the Typicality
                           and Adequacy Requirements of Rule 23 ......................... 12

            C.     Baltimore County Is Precisely the Type
                 of Lead Plaintiff Envisioned by the PSLRA ................................ 14

      III.   THE COURT SHOULD APPROVE
            BALTIMORE COUNTY'S CHOICE OF COUNSEL ........................... 15

CONCLUSION ............................................................................................ 17

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) ......................................................................11

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................................................................17

*In re Catalina Mktg. Corp. Sec. Litig.*,
    225 F.R.D. 684 (M.D. Fla. 2003).................................................................................11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..........................................................................9, 15, 16

*City of Pompano Beach Gen. Employees' Ret. Sys. v. Synovus Fin. Corp.*,
    No. 09-cv-1811, 2009 WL 4641804 (N.D. Ga. Dec. 1, 2009) .....................................7

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
    No. 06-cv-1716, 2007 WL 170556 (M.D. Fla. Jan. 18, 2007) ...................................11

*In re Enron Corp. Sec. Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex.  2008) ......................................................................17

*Fischler v. AmSouth Bancorp.*,
    No. 96-cv-1567, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997)...............................12, 14

*Grand Lodge of Pa. v. Peters*,
    No. 07-cv-479, 2007 WL 1812641 (M.D. Fla. June 22, 2007) .............................7, 12

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990).......................................................................................7

*Newman v. Eagle Bldg. Tech.*,
    209 F.R.D. 499 (S.D. Fla. 2002)..............................................................................7, 9

*Plymouth County Ret. Sys. v. Carter's, Inc.*,
    Civ. A. No. 1:08-cv-2940, 2009 WL 692141 (N.D. Ga. Mar. 13, 2009) .............11, 13

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*,
    No. 07-81038-CIV, 2008 WL 1943955 (S.D. Fla. May 2, 2008).........................13, 15

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ........................................................................16

*Vincelli v. Nat'l Home Health Care Corp.*,
    112 F. Supp. 2d 1309 (M.D. Fla. 2000)......................................................................7

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................7

## DOCKETED CASES

*In re American International Group, Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.)..........................................................................................16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    No. 07-cv-61542, Trial Tr. (S.D. Fla. Nov. 18, 2010)................................................16

*In re Countrywide Financial Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) ........................................................................................16

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-2237, Hr'g Tr. (S.D.N.Y. June 14, 2007)....................................................17

## FEDERAL STATUTES

15 U.S.C. § 78u-(4) *et seq.*......................................................................... *passim*

Fed. R. Civ. P. 23(a) .................................................................................................12, 14

## MISCELLANEOUS

H.R. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.A.A.N. 730 ..........................................................................4

S. Rep. No. 104-98 (1995),
    *reprinted in* 1995 U.S.C.A.A.N. 679 ..........................................................................4

## MOTION

Class member Baltimore County Employees' Retirement System ("Baltimore County") upon the following Memorandum of Law, the accompanying Declaration of Jack Reise ("Reise Decl.") and the exhibits attached thereto, and such other evidence as the Court may consider at a hearing on this motion, hereby moves the Court for an Order: (1) consolidating the above-captioned, related actions (the "Action"); (2) appointing Baltimore County as Lead Plaintiff for a Class of purchasers and acquirers of Lender Processing Services, Inc. ("LPS" or the "Company") common stock from July 29, 2009 through October 4, 2010, inclusive (the "Class Period"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approving Baltimore County's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.[1]

---

[1] Counsel for Baltimore County is aware of the directive in Local Rule 3.01(g) requiring that the moving party confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion. However, the lead plaintiff appointment process set up by the PSLRA, as described herein, makes this practice impossible. While all potential parties to the Action should be aware of the filing date, counsel for Baltimore County cannot determine who else may move for appointment as lead plaintiff at this time. Accordingly, counsel for Baltimore County requests that the Court waive the meet-and-confer requirement of Local Rule 3.01(g) with respect to the filing of this motion.

**MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

Pending before the Court is a securities class action brought against: (1) LPS, a mortgage servicing company that has worked with lenders on more than half of all U.S. foreclosures; (2) Jeffrey S. Carbiener, LPS' President and Chief Executive Officer; (3) Lee A. Kennedy, Chairman of LPS' board of directors; and (3) Francis Chan, LPS' former Executive Vice President and Chief Financial Officer (collectively, "Defendants").  The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5") promulgated thereunder.

LPS and one of its subsidiaries are currently under investigation by the U.S. Attorney for the Middle District of Florida (the "U.S. Attorney"), the State of Florida Attorney General (the "Attorney General"), and the U.S. Federal Reserve Board.  During the Class Period, LPS and the Company's now-shuttered, wholly-owned subsidiary DocX, LLC ("DocX") prepared mortgage assignment documents, which banks need to prove to courts that they own the mortgages upon which they seek foreclosure.  LPS is alleged to have issued materially false and misleading statements regarding the Company's business practices and finances during the Class Period.  The complaints filed in the action allege that Defendants fraudulently inflated LPS' stock price by failing to disclose that the Company was engaging in deceptive and improper document execution and preparation related to foreclosure proceedings.  These practices allowed Defendants to report positive financial performance and issue positive financial guidance during the

Class Period.  When the Company finally made its business practices known to the public, its stock dropped in response, causing the Class to incur millions of dollars in damages.

Pursuant to the Exchange Act, as amended by the PSLRA, and for the reasons set forth below, Baltimore County respectfully submits that it should be appointed Lead Plaintiff on behalf of purchasers and acquirers of LPS common stock during the Class Period who incurred damages as a result of the Defendants' alleged violations of the federal securities laws.  As set forth in detail below, Baltimore County lost $341,404, as calculated under the last-in-first-out ("LIFO") loss calculation methodology on its investments in LPS common stock during the Class Period.[2]

In addition, during the Class Period, Baltimore County purchased 38,800 net shares of LPS and spent more than $1.48 million acquiring LPS common stock.  A copy of the PSLRA-required Certification submitted by Baltimore County is attached as Exhibit A to the Reise Declaration.  This Certification sets forth all of Baltimore County's transactions in LPS common stock during the Class Period.  In addition, a chart reflecting the calculation of Baltimore County's financial losses on LPS common stock purchased during the Class Period is attached as Exhibit B to the Reise Declaration.  In light of the significant transactions and losses reflected in these exhibits, Baltimore County has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.  Baltimore County also

---

[2] Baltimore County lost $341,404, as calculated under the first-in-first-out ("FIFO") loss calculation methodology on its investments in LPS common stock during the Class Period.

meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of the absent Class, and it will fairly and adequately represent the interests of the Class.

Furthermore, because it is a sophisticated institutional investor and suffered losses on LPS common stock like the other Class members, Baltimore County is well suited to pursue litigation that is in the best interests of the Class. Indeed, the PSLRA's legislative history shows that large, sophisticated institutional investors like Baltimore County are precisely the type of investors whose participation in securities class actions the PSLRA was meant to foster. *See* H.R. Rep. No. 104-369 at 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), *reprinted in* 1995 U.S.C.A.A.N. 679, 685. In short, Baltimore County is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Finally, pursuant to the PSLRA, Baltimore County requests the Court appoint its choice of Labaton Sucharow as Lead Counsel for the Class and Robbins Geller as Liaison Counsel on behalf of the Class. These firms are eminently qualified to litigate this case and have extensive experience in the prosecution of securities fraud claims such as those asserted in the Action.

## **FACTUAL BACKGROUND**

Two complaints were filed against LPS in this Court, on November 23, 2010 and December 16, 2010, that assert claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. Specifically, the complaints allege that during the Class Period, Defendants failed to disclose that: (1) LPS had been repeatedly

engaging in improper and deceptive business practices; (2) DocX had been using robo-signers[3] that were falsifying lender affidavits and other documents; (3) LPS had engaged in improper fee-sharing agreements with law firms or foreclosure attorneys in Florida, including undisclosed contractual arrangements for wrongful fee splitting; (4) as a result of LPS' deceptive and improper business practices, the Company had reported misleading financial results; and (5) as a result of the foregoing, at all relevant times, the Company's reported financial outlook lacked a reasonable basis.

Formed from a spin-off in 2008, LPS is the nation's leading provider of integrated technology and outsourced services to the mortgage-lending industry.[4]  LPS' DocX subsidiary[5] provided lien releases and processed mortgage assignments in the United States.  LPS provides end-to-end services—its software is used by banks to track the majority of U.S. residential mortgages from the time they are originated until the debt is satisfied or the borrower defaults.  When a borrower defaults and a bank needs to foreclose, LPS helps process paperwork that the bank uses in court.  A majority of the fifty largest U.S. banks rely on LPS' suite of services and LPS has handled more than half of all U.S. foreclosures.

The true nature of the Company's business practices was slowly revealed over time.  On April 3, 2010, *The Wall Street Journal* disclosed an ongoing criminal

---

[3]  "Robo-signing" refers to the practice of some mortgage-service companies of permitting employees to automatically sign foreclosure documents without reviewing them.

[4]  LPS is a Delaware corporation headquartered in Jacksonville, Florida.  The Company's common stock trades on the New York Stock Exchange under the ticker symbol "LPS."

[5]  In 2010, LPS shut down the operations of DocX, which was organized in Georgia and based in Alpharetta, Georgia.

investigation into DocX's business practices by the U.S. Attorney.  Among other things, the article pointed out that LPS had admitted to inadvertently filing documents stating that an entity named "Bogus Assignee" was the owner of mortgage loans.  As a result of this news, LPS' stock dropped $1.57 per share, or 4.1 percent, on high volume, to close at $36.54 on April 5, 2010.

The Company announced its financial results for the second quarter of 2010 on July 22, 2010 after the markets had closed.  LPS reported a 2.3 percent decline in consolidated revenues to $599.1 million and net earnings of $80.4 million or $0.85 per diluted share.  In reaction to this news, the Company's stock dropped $2.30 per share, or 6.7 percent, on high volume to close at $31.99 on July 23, 2010.

After the markets closed on October 4, 2010, the Company issued a press release acknowledging that it had taken steps to remedy DocX's document-execution practices. LPS attempted to reassure the market, stating that:  "LPS continues to believe [the problems with DocX's mortgage assignments] will not have a material adverse impact on [LPS'] business or results of operations."  In the hours leading up to this disclosure, the Company's stock dropped $2.72 per share, or 8.6 percent, on high volume, to close at $28.76 per share on October 4, 2010.  Following this disclosure, LPS' stock dropped an additional $1.45 per share, or 5 percent, on extraordinary volume on October 5, 2010 to close are $27.31 per share.

 The Company's conduct and the revelations thereof have caused LPS' shareholders to lose millions of dollars.

**ARGUMENT**

I.      **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

The PSLRA requires the Court to consider a motion to consolidate prior to

deciding a motion for appointment of lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(ii); *see*

*also Grand Lodge of Pa. v. Peters*, No. 07-cv-479, 2007 WL 1812641, at *1 (M.D. Fla.

June 22, 2007) (recognizing that "[t]he PSLRA requires that the Court consolidate the

actions, if warranted, before determining lead plaintiff.").  "In securities actions where

the complaints are based on the same 'public statements and reports[,]' consolidation

[pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)")] is

appropriate if there are common questions of law and fact . . . ."  *Vincelli v. Nat'l Home*

*Health Care Corp.*, 112 F. Supp. 2d 1309, 1313 (M.D. Fla. 2000); *see also City of*

*Pompano Beach Gen. Employees' Ret. Sys. v. Synovus Fin. Corp.*, No. 09-cv-1811, 2009

WL 4641804, at *2 (N.D. Ga. Dec. 1, 2009) ("the court may consolidate actions that

involve a common question of law or fact.") (internal quotations and citations omitted);

*Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (same).  The Court has broad

discretion under this Rule to consolidate cases pending within the District.  *Johnson v.*

*Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  Courts recognize that class action

shareholder suits are ideally suited to consolidation because their unification expedites

proceedings, reduces duplication, and minimizes the expenditure of time and money by

all concerned.  *See Newman v. Eagle Bldg. Tech*., 209 F.R.D. 499, 501-02 (S.D. Fla.

2002). ("Consolidation of shareholder class actions is recognized as benefitting the court

and the parties by expediting pretrial proceedings, reducing case duplication, and minimizing the expenditure of time and money by all persons concerned.").

Two related securities class actions have been filed in this Court against Defendants.  These actions present substantially similar factual and legal issues, stem from the same alleged scheme by Defendants, name the same defendants, and allege violations of federal securities laws.  Because these actions are based on the same facts and involve the same subject matter, discovery obtained in this lawsuit will undoubtedly be relevant to all others and similar class certification issues will be relevant to all the related actions.  Accordingly, consolidation of the actions is appropriate under Rule 42(a) and the PSLRA, and Baltimore County respectfully submits that these actions should be consolidated.

II.    **BALTIMORE COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF**

   A.    **The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any timely motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff.  Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or made a timely motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Newman*, 209 F.R.D. at 502; *In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001).  This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Newman*, 209 F.R.D. at 502; *Cendant*, 264 F.3d at 222.

**B.**    **Baltimore County Is the "Most Adequate Plaintiff"**

Baltimore County respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.

**1.**    **Baltimore County Has Satisfied the
PSLRA's Procedural Requirements**

Baltimore County has filed this motion to serve as lead plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on November 18, 2010, Robbins Geller, counsel for the first plaintiff to file a complaint in the Action, caused notice regarding the pending nature of this case to be published on *Business Wire*, now known as *EON Enhanced Online News*, a widely-circulated, national, business-oriented news reporting service, on November 23, 2010.  *See* Notice, Reise Decl. Ex. C.  Thus, as permitted by the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before January 24, 2011.  Baltimore County has filed its motion within the required period.

**2.**    **Baltimore County Has the Largest
Financial Interest in the Outcome of the Action**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does explicitly provide a mechanism for determining the largest financial interest in an action, a broad body of case law has established four key factors that guide courts' analyses in the Eleventh Circuit: (1) the number of shares of the subject securities purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See e.g.*, *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1341 (N.D. Ala. 2000) ("four factors have been found commonly relevant to the determination of 'largest financial interest'"); *Plymouth County Ret. Sys. v. Carter's, Inc.* ("*Carter's*"), Civ. A. No. 1:08-cv-2940, 2009 WL 692141, at * 2 (N.D. Ga. Mar. 13, 2009) (same). Many courts consider the loss factor to be the most important. *See Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, No. 06-cv-1716, 2007 WL 170556, at *3 (M.D. Fla. Jan. 18, 2007) (comparing class period losses to determine financial interest); *In re Catalina Mktg. Corp. Sec. Litig.*, 225 F.R.D. 684, 686 (M.D. Fla. 2003) (same).

During the Class Period, Baltimore County suffered a substantial loss of approximately $341,404 calculated under the LIFO method of accounting for purchases and sales, purchased 38,800 net shares of LPS common stock, and spent more than $1.48 million acquiring LPS common stock. *See* Loss Analysis, Reise Decl. Ex. B. Importantly, Baltimore County did not sell any of its shares during the Class Period. As such, Baltimore County's losses are not impacted by the removal of "in-and-out" losses associated with pre-disclosure stock sales. Baltimore County is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently,

and because it also satisfies Rule 23's typicality and adequacy requirements, Baltimore County is entitled to the legal presumption that it is the most adequate plaintiff.

### 3. Baltimore County Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-(4)(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) such claims are typical of those of the class; and (4) the representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See, e.g.*, *Grand Lodge*, 2007 WL 1812641, at *1 n.7 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA) (citing *Cendant*, 264 F.3d at 264); *Fischler v. AmSouth Bancorp.*, No. 96-cv-1567, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997) ("A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification.").

### (a) Baltimore County's Claims Are Typical of Those of the Class

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists "if the 'claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on

12

the same legal theory.'" *Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*("*Office Depot*"), No. 07-81038-CIV, 2008 WL 1943955, at *2 (S.D. Fla. May 2, 2008) (quoting *Romberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  Notably, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality.  *Carter's*, 2009 WL 692141, at *2.

The typicality requirement is plainly satisfied here because Baltimore County, which is not subject to any unique or special defenses, seeks the same relief, and advances the same legal theories as other Class members.  Like all members of the Class, Baltimore County: (1) purchased or acquired LPS common stock during the Class Period; (2) at prices artificially inflated by Defendants' misrepresentations and omissions; (3) suffered damages when the truth was revealed to the market; and (4) is using the Exchange Act to seek redress for its losses.  *See id.* at *3 (discussing ways in which lead plaintiff movants can meet the typicality requirement).  Baltimore County's claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class' claims, satisfy Rule 23(a)(3)'s typicality requirement.

**(b)      Baltimore County Will Fairly and
<u>Adequately Protect the Interests of the Class</u>**

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is adequate when the movant has: (1) common interests with the class and no interests antagonistic to those of class members; and (2) the representative has a willingness and the ability to vigorously

prosecute the action though adequate financing and competent counsel. *Fischler*, 1997 WL 118429, at *3.

Baltimore County will fairly and adequately represent the interests of the proposed Class. No antagonism exists between Baltimore County's interests and those of the absent Class members; rather, the interests Baltimore County and Class members are squarely aligned. In addition, Baltimore County has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Baltimore County suffered substantial losses due to Defendants' alleged fraud and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the Action. Accordingly, Baltimore County satisfies the adequacy requirement.

**C.      Baltimore County Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the requirements of Rule 23, Baltimore County, as a large, sophisticated institutional investor, is the type of investor Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions. *See, e.g.*, *Office Depot*, 2008 WL 1943955, at *2 ("in passing PSLRA, Congress intended 'that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions'") (quoting *In re Vesta Ins. Group, Inc., Sec. Litig.*, 98-AR-1407, 1999 WL 34831475, at *8 (N.D. Ala. Oct. 25, 1999)). Congress noted in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will

14

serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *Cendant*, 264 F.3d at 244, 264 (quoting H.R. Rep. No. 104-369 at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733).

Baltimore County manages approximately $2.1 billion in assets for 17,065 active and retired employees in Baltimore County, Maryland. Baltimore County is a sophisticated institutional investor with sufficient resources to adequately litigate the Action and supervise Class counsel. Baltimore County understands the fiduciary duties of a lead plaintiff, is willing to oversee the vigorous prosecution of the Action, and has pledged to "provid[e] testimony at deposition and trial, if necessary." *See* Certification, Reise Decl. Ex. A. Thus, as demonstrated herein, Baltimore County is the very personification of the lead plaintiff contemplated by the PSLRA.

## III.   THE COURT SHOULD APPROVE
## BALTIMORE COUNTY'S CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. Baltimore County has selected Labaton Sucharow to serve as Lead Counsel for the Class and Robbins Geller to serve as Liaison Counsel for the Class.

Labaton Sucharow has excelled as lead counsel in numerous important actions on behalf of defrauded investors. In November 2010, Labaton Sucharow, as class counsel for a certified class of investors, secured a favorable jury verdict in a securities fraud suit

brought against BankAtlantic and several of its officers in the District Court for the Southern District of Florida. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-cv-61542, Trial Tr. at 4350:8-4364:10 (S.D. Fla. Nov. 18, 2010). Labaton Sucharow is also lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it recently achieved settlements in principle totaling approximately $1 billion. In addition, Labaton Sucharow is lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which resulted in a settlement in principle of $624 million, the largest subprime-related securities class action settlement achieved to date. Labaton Sucharow served as lead counsel in the Waste Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at the time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"); *see also* Labaton Sucharow Firm Resume, Reise Decl. Ex. D. Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against HealthSouth Corp., The Bear Stearns Cos., Inc., Federal National Mortgage Association (Fannie Mae), Satyam Computer Services Ltd., and others. In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-cv-2237, Hr'g Tr. at 24:25-25:1 (S.D.N.Y. June 14, 2007), Judge Jed S. Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to . . . courts for the excellence of its representation."

Robbins Geller, a 180-lawyer firm with offices nationwide, is actively engaged in securities litigation. *See* Robbins Geller Firm Resume, Reise Decl. Ex. E. Robbins Geller's reputation for excellence has been repeatedly noted by district courts throughout the country. *See In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed"); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (noting that Robbins Geller's work and "quality of representation [were] superb.").

Accordingly, Labaton Sucharow and Robbins Geller are well qualified to prosecute the securities fraud claims asserted in the Action, and Baltimore County respectfully requests that the Court appoint Labaton Sucharow as Lead Counsel and Robbins Geller as Liaison Counsel for the Class.

## <u>CONCLUSION</u>

For the foregoing reasons, Baltimore County respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint Baltimore County Employees' Retirement System as Lead Plaintiff; (3) approve its selection of Labaton Sucharow LLP as Lead Counsel for the Class and Robbins Geller Rudman & Dowd LLP as Liaison Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: January 24, 2011                    Respectfully submitted,

By:  */s/ Jack Reise*

Jack Reise  (Fla. Bar No. 58149 )
jreise@rgrdlaw.com
Stephen R. Astley  (Fla. Bar No. 139254)
sastley@rgrdlaw.com

17

**ROBBINS GELLER**
**RUDMAN & DOWD LLP**
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida  33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

*Proposed Liaison Counsel*

**LABATON SUCHAROW LLP**
Christopher J. Keller
ckeller@labaton.com
Michael W. Stocker
mstocker@labaton.com
Rachel A. Avan
ravan@labaton.com
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Baltimore County*
*Employees' Retirement System and*
*Proposed Lead Counsel for the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on January 24, 2011, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send a

Notice of Electronic Filing to all counsel of record.

 */s/ Jack Reise*
Jack Reise

18