UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LENDER PROCESSING SERVICES, INC., et al., <br><br> Defendants. | No. 3:10-cv-01073-TJC-JBT |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND <u>MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

MOTION.......................................................................................................................... 1

MEMORANDUM OF LEGAL AUTHORITY............................................................... 1

PRELIMINARY STATEMENT ..................................................................................... 1

    I.     SUMMARY OF PROCEDURAL HISTORY........................................................ 3

    II.    SUMMARY OF THE PROPOSED SETTLEMENT............................................ 4

    III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY
         APPROVAL ........................................................................................................ 5

         A.    The Proposed Settlement Has No Obvious Deficiencies and is the
              Result of Good Faith, Arm's-Length Negotiations.................................... 7

         B.    Substantively, the Proposed Settlement is Well Within the Range
              of Reasonableness........................................................................................ 8

    IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE
         SETTLEMENT CLASS ..................................................................................... 10

         A.    The Consolidated Action Meets the Requirements of Rule 23(a) ............ 10

         B.    The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................... 13

         C.    The Court Should Appoint Counsel as Class and Liaison Counsel.......... 16

    V.    THE COURT SHOULD APPROVE THE PROPOSED FORMS OF
         NOTICE AND PLAN FOR PROVIDING NOTICE ......................................... 16

CONCLUSION............................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972) ...........................................................................................14

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)...........................................................................................13

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)...........................................................................................14

*Beavers v. Am. Cast Iron Pipe Co.,*
    164 F. Supp. 2d 1290 (N.D. Ala. 2001)...............................................................6

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984) .........................................................................5, 6

*Canupp v. Liberty Behavioral Health Corp.,*
    417 F. App'x 843 (11th Cir. 2011) ......................................................................7

*In re Checking Account Overdraft Litig.,*
    No. 1:09-MD-02036-JLK, 2012 WL 4173458 (S.D. Fla. Sept. 19, 2012) ...............................5

*In re Checking Account Overdraft Litig.,*
    275 F.R.D. 654 (S.D. Fla. 2011).............................................................7, 10, 12

*Cooper v. Pac. Life Ins. Co.,*
    229 F.R.D. 245 (S.D. Ga. 2005) .................................................................11, 12

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195 (5th Cir. 1981) ...............................................................................8

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) .............................................................................7

*Cox v. Am Cast Iron Pipe Co.,*
    784 F.2d 1546 (11th Cir. 1986) .........................................................................11

*In re Domestic Air Transp. Antitrust Litig.,*
    148 F.R.D. 297 (N.D. Ga. 1993).........................................................................7

*In re Elan Sec. Litig.,*
    385 F. Supp. 2d 363 (S.D.N.Y. 2005)..................................................................8

*Faught v. Am. Home Shield Corp.*,
661 F.3d 1040 (11th Cir. 2011) ...................................................................6

*FindWhat Investor Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ...................................................................9

*Francisco v. Numismatic Guar. Corp. of Am.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)...........................7

*Fresco v. Auto Data Direct, Inc.*,
No. 03 Civ. 61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ...............5

*Garst v. Franklin Life Ins. Co.*,
No. 97-0074, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999)................13

*In re HealthSouth Corp. Sec. Litig.*,
213 F.R.D. 447 (N.D. Ala. 2003)................................................10, 11, 12

*Kilgo v. Bowman Transp., Inc.*,
789 F.2d 859 (11th Cir. 1986) ..................................................................11

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ......................................................10, 12, 15

*LaGrasta v. First Union Sec., Inc.*,
No. 01 cv 251, 2005 WL 1875469 (M.D. Fla. Aug. 8, 2005)....................10

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 660 (M.D. Ala. 1988) .............................................................5

*In re Miller Indus. Sec. Litig.*,
186 F.R.D. 680 (N.D. Ga. 1999).................................................................13

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
MDL No. 926, 1994 WL 114580 (N.D. Ala. Apr. 1, 1994) ........................6

*In re Skinner Grp., Inc.*,
206 B.R. 252 (Bankr. N.D. Ga. 1997) .........................................................5

*In re Smith*,
926 F.2d 1027 (11th Cir. 1991) ...................................................................6

*In re U. S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .....................................................................5

*Valley Drug Co. v. Geneva Pharm, Inc.*,
350 F.3d 1181 (11th Cir. 2003) .................................................................10

*Wells v. HBO & Co.*,
    No. 87 cv 657, 1991 WL 131177 (N.D. Ga. Apr. 24, 1991) ......................................12, 14, 15

*Woodward v. NOR-AM Chem. Co.*,
    No. 94-0780, 1996 WL 1063670 (S.D. Ala. May 23, 1996) ....................................................8

**STATUTES**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

15 U.S.C. § 78u-4(a)(7) ...............................................................................................3, 8, 17

**OTHER AUTHORITIES**

4 Herbert Newberg & Alba Conte,
    *Newberg on Class Actions*  (4th ed. 1992)................................................................................8

## MOTION

Lead Plaintiff, Baltimore County Employees' Retirement System ("Lead Plaintiff" or "Baltimore County"), upon the accompanying Memorandum of Legal Authority in Support of Lead Plaintiff's Motion for Preliminary Approval and the accompanying Declaration of Jonathan Gardner ("Gardner Decl.") and the exhibits attached thereto, hereby moves the Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed class action settlement; (2) certifying the Settlement Class for settlement purposes only; (3) appointing Lead Plaintiff as Class Representative and Labaton Sucharow LLP as Class Counsel and Robbins Geller Rudman & Dowd LLP as Liaison Class Counsel; (4) approving the proposed forms of (a) the Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Notice"); (b) the Proof of Claim and Release Form; and (c) the Summary Notice of Pendency of Class Action and Proposed Settlement and Motion for Attorneys' Fees and Expenses (the "Summary Notice"); (5) approving the proposed methods of disseminating notice; (6) approving the appointment of Epiq Systems, Inc. as the Claims Administrator; (7) setting a date for the Settlement Hearing; and (8) such other and further relief as the Court deems just and proper.[1]

## MEMORANDUM OF LEGAL AUTHORITY

### PRELIMINARY STATEMENT

Lead Plaintiff respectfully submits this memorandum of legal authority in support of its unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order:

---

[1] Pursuant to Local Rule 3.01(g), Defendants do not oppose this motion (but Defendants dispute many of the allegations set forth in the complaints filed in this Action, as summarized herein).

(i)     Preliminarily approving the proposed settlement ("Settlement")[2] of this class action (the "Action"), as set forth in the Stipulation and Agreement of Settlement dated January 28, 2013 (the "Stipulation"), submitted as Exhibit 1 to the accompanying Declaration of Jonathan Gardner, dated May 6, 2013 ("Gardner Decl.");

(ii)    certifying the proposed Settlement Class, for settlement purposes only;

(iii)   appointing Lead Plaintiff Baltimore County as representative of the proposed Class ("Class Representative");

(iv)    appointing Labaton Sucharow LLP ("Labaton Sucharow") as Class Counsel and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Liason Class Counsel for the Settlement Class;

(v)     approving the proposed forms of the Notice and the Summary Notice (attached as Exhibits 1 and 3 to the accompanying proposed Preliminary Approval Order), and approving the proposed methods of disseminating notice as provided in the proposed Preliminary Approval Order; and

(vi)    setting a date for the Settlement Hearing.

Pursuant to the Stipulation, defendant Lender Processing Services, Inc. ("LPS" or the "Company") has agreed to pay $14,000,000 (the "Settlement Amount") in cash for the benefit of the Settlement Class to settle all claims asserted in the Action and the release of all related claims (the "Plaintiffs' Released Claims") by Lead Plaintiff and the members of the Settlement Class against the Defendants and their affiliated persons and entities (the "Released Defendant Parties").  The proposed Settlement Class is defined as follows:

> All Persons who, during the period from August 6, 2008 to and through October 4, 2010, inclusive, purchased or otherwise acquired the publicly traded common stock of LPS and who were allegedly damaged thereby.  Excluded from the Settlement Class are: Defendants; the officers and directors of LPS; the Immediate Family Members of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a controlling interest; the legal representatives, heirs, successors-in-interest or assigns of any such excluded Person; and any Person who would otherwise be a Settlement Class Member but properly excludes himself, herself or itself by filing a valid and

---

[2] Unless otherwise specified, defined terms in this memorandum of law shall have the same meanings ascribed to them in the Stipulation.

timely request for exclusion in accordance with the requirements set forth in the Notice.

The Action stems from allegedly material misstatements and omissions regarding the improper business model driving the Company's default management services revenue, including improper attorney "fee splitting" and document execution practices such as "robo-signing."  Lead Plaintiff asserts claims against LPS, its Chief Executive Officer during the Class Period, Jeffrey S. Carbiener ("Carbiener"), and its Chief Financial Officer, Francis K. Chan ("Chan") (collectively, the "Defendants") arising under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and including control person claims under § 20(a) of the Exchange Act.  When the truth about LPS's improper business practices was revealed in a series of partial disclosures beginning on April 16, 2009 and ending on October 4, 2010, the Company's stock price fell almost 18% on the news.

As set forth below, the Settlement represents a substantial recovery that warrants preliminary approval.

I.      **SUMMARY OF PROCEDURAL HISTORY**

The Action began on November 23, 2010.  ECF No. 1.  On March 10, 2011 the Court issued an order appointing Baltimore County as Lead Plaintiff, Labaton Sucharow as Lead Counsel, and Robbins Geller as Liaison Counsel to represent the Class, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 et seq. (the "PSLRA").  ECF No. 31.

Lead Plaintiff filed an Amended Class Action Complaint (the "AC") on May 18, 2011.  ECF No. 41.  Defendants moved to dismiss the AC on July 18, 2011 (ECF No. 45), and briefing on the motion to dismiss was completed on October 21, 2011 (ECF No. 57).  On March 30, 2012, the Court issued an order finding that Defendants had authority over their statements, that

the alleged misstatements could be false and misleading, and that the AC sufficiently plead loss causation.  However, the Court granted the motion to dismiss on scienter grounds, granting leave to replead, and directing that Lead Plaintiff "make reasonable efforts to remove extraneous and redundant factual allegations."  ECF No. 58.

Lead Plaintiff filed the Second Amended Class Action Complaint (the "SAC") on May 8, 2012.  ECF No. 61.  Defendants moved to dismiss the SAC on June 8, 2012 (ECF No. 63), and Lead Plaintiff filed its opposition on July 9, 2012 (ECF No. 65).  On July 13, 2012 the Court ordered Lead Plaintiff to address why the SAC was longer than the AC, given the Court's directive to remove extraneous allegations.  ECF No. 66.  The Parties submitted respective statements regarding the SAC's length, with Lead Plaintiff submitting that the added length was due to additional scienter allegations based on information not available when the AC was filed. On August 24, 2012 the Court ordered that Lead Plaintiff amend the SAC to reduce its length as much as possible, and terminated the pending motion to dismiss the SAC.  ECF No. 76.  Lead Plaintiff accordingly filed the Third Amended Complaint ("Complaint") on October 5, 2012. ECF No. 81.  Defendants moved to dismiss the Complaint on November 16, 2012 (ECF No. 82) and Lead Plaintiff filed its opposition on December 14, 2012 (ECF No. 84).

On January 9, 2013, the Parties met with mediator Jed Melnick, Esq. of JAMS to explore a potential negotiated resolution of the claims.  These negotiations resulted in an agreement on January 23, 2013 to settle all claims that was memorialized in the subsequent Stipulation.

## II.    SUMMARY OF THE PROPOSED SETTLEMENT

In exchange for dismissal of the Complaint and customary releases of Lead Plaintiff's and the Settlement Class Members' claims, LPS has agreed to pay $14,000,000 in cash.

### III.     THE PROPOSED SETTLEMENT MERITS
######        PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with "[p]ublic policy [that] strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  Indeed, this policy applies especially to class actions alleging securities fraud.  *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("securities fraud class actions readily lend themselves to settlement").

Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action.  To avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach," holding a preliminary hearing prior to considering the settlement for final approval.  *In re Skinner Grp., Inc*., 206 B.R. 252, 260-61 (Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

The preliminary approval hearing allows the Court to ascertain whether (1) the settlement has any obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted.  *See Fresco v. Auto Data Direct, Inc.*, No. 03 Civ. 61063, 2007 WL 2330895, at * 4 (S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement.") (internal citations omitted); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within

the range of reason."). After preliminary approval, the class is notified of the settlement and of the final settlement hearing. *See, e.g., Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1295 (N.D. Ala. 2001); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, MDL No. 926, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (granting preliminary approval and setting final hearing at future date after class has received notice). The preliminary approval process is less rigorous and formal than final approval. [3]

The proposed Settlement has no obvious deficiencies and is well within a reasonable range. *First*, the Settlement is the result of arm's-length negotiations, including a formal mediation with an experienced and impartial mediator, by well-informed and experienced counsel. *Second*, when balanced against the substantial risk of continued litigation, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Accordingly, the proposed Settlement amply satisfies Rule 23(e), and the Court should preliminarily approve the proposed Settlement and authorize dissemination of notice to the Settlement Class substantially in the form of the Notice and Summary Notice submitted herewith, and in the manner set forth in the proposed Preliminary Approval Order.

---

[3] In the second step, to finally approve a class action settlement pursuant to Rule 23(e), the court "must find that it is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal citation omitted). This inquiry is determined by consideration of: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011) (affirming lower court's analysis under *Bennett*). A district court's evaluation under the Bennett factors "will be overturned only upon a clear showing of abuse of discretion." *Id*. In evaluating the settlement, the court may rely on the judgment of experienced counsel in the case. *See In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

**A.    The Proposed Settlement Has No Obvious Deficiencies
and is the Result of Good Faith, Arm's-Length Negotiations**

Courts accord considerable weight to the opinion of experienced and informed counsel.
*See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011)
("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its
own judgment for that of counsel") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.
1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga.
1993) (same); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at
*12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and
reasonable provides strong evidence that the settlement merits the Court's approval.  Here, the
Court gives 'great weight to the recommendations of counsel for the parties, given their
considerable experience in this type of litigation.'").  Accordingly, "a presumption of fairness"
attaches to settlements negotiated at arm's length by informed and experienced class counsel.
*See In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Moreover, the Settlement was reached after negotiation by experienced counsel, including
consultation with an impartial and independent mediator.  *Id*. (approving settlement that was "the
product of informed, good-faith, arm's-length negotiations between the parties and their capable
and experienced counsel, and [which] was reached with the assistance of a well-qualified and
experienced mediator").

Lead Plaintiff's Counsel has decades of experience prosecuting securities class actions and
has been praised by numerous courts around the country.  Gardner Decl. Exs. 2 and 3.  Further,
Lead Plaintiff's Counsel is well informed about the strengths and weaknesses of the claims
against the Defendants – the Settlement was reached only after a thorough investigation of the
facts and merits of the legal claims and defenses, as evidenced by the three amended complaints

and three briefed motions to dismiss, as well as substantial confirmatory discovery.  Indeed, "formal discovery [is not] a necessary ticket to the bargaining table."  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *see also Woodward v. NOR-AM Chemical Co.*, No. 94-0780, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("formal discovery is not essential to judicial approval where class counsel otherwise have sufficient information to evaluate the proposed settlement"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts).

Moreover, the Settlement has no obvious deficiencies.[4]  In addition to the all cash recovery, all Settlement Class Members, including Lead Plaintiff, will be treated fairly and in a similar manner, each recovering their *pro rata* share of the Net Settlement Fund according to a Court-approved Plan of Allocation.

### B.    Substantively, the Proposed Settlement is Well Within the Range of Reasonableness

The Settlement's $14 million cash recovery is well within the range of reasonableness and compares very favorably against other securities class action settlements in recent years.  A recent study of such settlements by NERA Economic Consulting, a firm that frequently provides damages expertise to defendants in securities cases, reported that between January 1996 and the December 2012, since the passage of the PSLRA, median settlement amounts in securities class actions ranged from $3.7 million to $12.0 million.  *See* Dr. Renzo Comolli, Sukaina Klein, Dr. Ronald I. Miller, and Svetlana Starykh, *Recent Trends in Securities Class Litigation: 2012 Full-*

---

[4] "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."  4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.51 at 11.88 (4th ed. 1992).

*Year Review*, at 28 (NERA Jan. 29, 2013) (Gardner Decl. Ex. 4).  Additionally, a recent study by Cornerstone Research reported that approximately 80 percent of post–PSLRA settlements have settled for under $25 million.  *See* Ellen M. Ryan & Lauren E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis*, at 4 (Cornerstone Research 2013) (Gardner Decl. Ex. 5).

Further, litigation against the Defendants would be subject to the risks of complex securities litigation.  For example, the Complaint could be dismissed for failure to satisfy the PSLRA's pleading standards for scienter (the same grounds that warranted dismissal of the AC), or after one or more motions for summary judgment following the completion of fact and expert discovery.  Lead Plaintiff could also fail to prove its claims at trial and the size of the damages awarded might be considerably less than those claimed (or nothing).

Given the complexities of the issues involved in the Action, including the multiple corrective disclosures alleged and whether those disclosures sufficiently relate to the alleged misrepresentations, as well as a lack of allegations pleading direct knowledge of the alleged fraud by the Individual Defendants, Lead Plaintiff's entitlement to recovery is correspondingly uncertain.  Indeed, there is considerable dispute between the Settling Parties over loss causation, including whether the market was aware, prior to the alleged corrective disclosures, of problems with LPS's attorney network and whether the market considered information regarding the document execution practices at an LPS subsidiary material.  *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011) ("The loss causation element of a Rule 10b-5 claim requires that the defendant's fraud be both the but-for and proximate cause of a plaintiff's later losses.").  In contrast, the proposed Settlement achieves the certainty of a substantial distribution to Settlement Class Members and warrants preliminary approval.

## IV.   THE COURT SHOULD PRELIMINARILY
##        CERTIFY THE SETTLEMENT CLASS

"A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue," if all four subsections of Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the subsections of Rule 23(b), are satisfied.  *In re Checking Account*, 275 F.R.D. at 659; *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n.2 (11th Cir. 1987).  A trial court may consider the merits of the case only to the degree necessary to determine whether the requirements of Rule 23 are satisfied.  *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 n.15 (11th Cir. 2003). Accordingly, trial courts are not permitted to "reject class certification based only on an assessment of Plaintiffs' likelihood of success on the claim."  *LaGrasta v. First Union Sec., Inc.*, No. 01 cv 251, 2005 WL 1875469, at *2 (M.D. Fla. Aug. 8, 2005).  Here, Lead Plaintiff seeks certification of the Settlement Class solely for purposes of the Settlement.

### A.   The Consolidated Action Meets the Requirements of Rule 23(a)

### 1.   The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  "Impracticable does not mean impossible; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class."  *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 457 (N.D. Ala. 2003) (internal citation omitted).  Indeed, "[c]ourts generally presume that plaintiffs establish numerosity when the claims involved securities traded nationally."  *Id.*

Here, according to LPS's public SEC filings, LPS had approximately 93 million shares outstanding that traded on the NYSE during the Class Period.  ¶ 299.[5]  Although the precise

---

[5] All references to "¶__" are to paragraphs in the Complaint.

number of investors who purchased the Company's shares during the Class Period may not be currently known, the proposed Settlement Class plainly exceeds the minimum numbers needed to satisfy numerosity under Rule 23. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### 2.   There are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Commonality "does not require that all the questions of law and fact raised by the dispute be common." *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546, 1557 (11th Cir. 1986). Rather, "[t]he threshold for establishing commonality… is not onerous – where a common scheme of deception is credibly alleged, Rule 23(a)(2) is met." *Cooper v. Pac. Life Ins. Co*., 229 F.R.D. 245, 257 (S.D. Ga. 2005).

Here, the central questions of whether (1) the Defendants' public statements were materially false; (2) the Defendants acted with the requisite mental state; and (3) the Settlement Class relied on the Defendants' alleged misstatements and omissions, are the same for each Settlement Class Member. Therefore, Defendants' alleged liability will be common to all Settlement Class Members, and the claims of each member arise from the same operative facts and legal theories. *HealthSouth*, 213 F.R.D. at 458 ("[t]he court concludes that some questions of law or fact are common to the class and, thus, plaintiffs have met the minimum requirement of Fed. R. Civ. P. 23(a)(2)").

### 3.   The Proposed Class Representative's Claims Are Typical

Rule 23(a)(3)'s typicality requirement is satisfied when the plaintiff shows that each representative's claims "arise from the same event or patterns or practice and are based on the same legal theory" as those of other class members. *Cooper*, 229 F.R.D at 258. The named

representative and the class members need not be identically situated.  *See HealthSouth*, 213 F.R.D. at 460.  "The important inquiry is whether the proposed class representative's claims have the same essential characteristics as those of the proposed class."  *Id*. at  458.  Thus, minor "factual differences between the class members' and the representative's claims" will not defeat typicality.  *Wells v. HBO & Co*., No. 87 cv 657, 1991 WL 131177, at *3 (N.D. Ga. Apr. 24, 1991).

Baltimore County purchased the Company's shares during the Class Period, ¶14, asserts the same claims, makes the same legal and factual arguments as the Settlement Class, and "allege[s] the same types of harm and entitlement to relief."  *Checking Account*, 275 F.R.D. at 659.  Accordingly, Baltimore County's claims are typical.

### 4. The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class

To satisfy Rule 23(a)(4), the adequacy of representation requirement: (1) class counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the representative plaintiff's interests must not be antagonistic to those of the class.  *Kirkpatrick*, 827 F.2d at 726.

*First*, Labaton Sucharow and Robbins Geller, Court-appointed Lead and Liaison Counsel for Lead Plaintiff and the proposed class, are amply qualified and experienced, and have litigated the Action vigorously and effectively on behalf of Lead Plaintiff and the proposed Settlement Class.  *See* Gardner Decl. Exs. 2 and 3.

*Second*, no conflict exists.  Baltimore County purchased LPS's shares during the Class Period, as did the other Settlement Class Members, and has been similarly damaged by the Defendants' alleged conduct.  Moreover, as Lead Plaintiff, Baltimore County has been involved

actively in the Action, including attending the January 9, 2013 mediation session.  Accordingly, Rule 23(a)(4) is satisfied.

**B.**      **The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members ("predominance"), and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").  These conditions are present here.

### 1.      Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id*. at 625.  Lead Plaintiff need not show that all questions of law or fact are common, but only that some questions are common and that they predominate over individual questions.  *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999).

The common questions of law and fact set forth *supra* predominate over any conceivable individual question because the Defendants' alleged misconduct affected all Settlement Class Members in the same manner.  Thus, each Settlement Class Member would need to demonstrate the same facts to establish the Defendants' alleged violations of the Exchange Act (*i.e.,* through public statements made to the market and documents publicly filed with the Securities and Exchange Commission).  Generalized proof will be necessary with respect to whether: (1) the Defendants' alleged misstatements and omissions were materially false; (2) the Defendants

possessed the requisite scienter; and (3) LPS's investors relied on the Defendants' alleged misstatements and omissions, and were damaged thereby.[6]

Predominance of common questions generally will be found where, as here, "a class of purchasers allegedly [has been] defrauded over a period of time by a similar common thread or scheme to which all alleged non-disclosures or misrepresentations relate." *Garst v. Franklin Life Ins. Co.*, No. 97-0074, 1999 U.S. Dist. LEXIS 22666, at *54 (N.D. Ala. June 25, 1999) ("plaintiffs' allegations of a common scheme of deception are sufficient to demonstrate that common questions predominate"); *Wells*, 1991 WL 131177, at *7 (predominance satisfied in securities fraud action).

Moreover, Baltimore County's Section 10(b) claims invoke (i) *Basic's* fraud on the market doctrine, which dispenses with the requirement that an investor prove individual reliance on a particular statement (*see Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988)); and (ii) *Affiliated Ute's* presumption of reliance on material omissions, which presumes investors' reliance and precludes any argument that issues of individual reliance defeat class certification (*see Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972)) LPS's securities traded on an efficient market (the NYSE) throughout the Class Period (¶ 299).[7]

---

[6] Indeed, the sole question not subject to "generalized proof" is the amount of each class member's damages, which will be calculated using the Plan of Allocation approved by the Court. Individual questions of damages, however, are common to securities class actions and are no bar to class certification. *Wells*, 1991 WL 131177, at *7 ("[w]hile some individual issues, such as reliance and damages may be presented, they are not outweighed by the common questions of whether defendant violated the securities laws, whether defendant misrepresented the condition of the company to the public, and whether such misrepresentations/omissions were the cause of an artificial inflation in the price of defendant's stock.").

[7] LPS's stock was actively traded on the NYSE, an open and efficient market, with over 93 million shares of common stock outstanding during the Class Period. *See* ¶ 299. As a regulated issuer, LPS regularly made public filings with the SEC, communicated with the market through established communications mechanisms, and was followed by major securities brokerages and analysts. ¶¶ 291, 299.

Accordingly, Lead Plaintiff would be able to present common legal and factual arguments regarding all elements of its claims, including reliance, thus satisfying the predominance requirement of Rule 23(b)(3).

## 2. A Class Action Is the Superior Method for Resolution

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action.

Here, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick*, 827 F.2d at 725. Further, certification is the superior method to facilitate the resolution of the Settlement Class's claims against the Defendants. Without the settlement class device, the Defendants could not obtain a class-wide release, and would have little incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes permits the Settlement to be administered in an organized and efficient manner. *See Wells*, 1991 WL 131177, at *7 ("Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device.").

Accordingly, the Court should find that the requirements of both Rules 23(a) and (b) are met, and certify the Settlement Class.

### C.     The Court Should Appoint Counsel as Class and Liaison Counsel

"[A] court that certifies a class must appoint class counsel."  Rule 23(g)(1).  Lead Plaintiff respectfully requests that Labaton Sucharow and Robbins Geller be appointed Class Counsel and Liaison Class Counsel, respectively, for the Settlement Class.  These firms have (and will continue to) fairly and adequately represented the Settlement Class.  Proposed counsel are knowledgeable about the applicable law, experienced in handling class actions, have performed substantial work in pursuing the claims and in reaching a settlement, and have committed the necessary resources to representing the Settlement Class.  *See* Rule 23(g)(1)(A).

## V.     THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice and Summary Notice.  (*See* Exs. 1 and 3 to the accompanying proposed Preliminary Approval Order).  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice will be mailed to all potential Settlement Class Members who can be identified and apprises them of the nature of the Action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released.  The Notice also advises that a Settlement Class Member may enter an appearance through counsel if desired, notes that the Court will exclude from the Settlement Class any Settlement Class Member who timely requests exclusion (and sets forth the procedures and deadline for doing so), and further describes: (1) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3), (2) how to object to the proposed Settlement and/or requested attorneys' fees, and (3) how to make a claim.[8]

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*: stating the amount of the Settlement on both an aggregate and average per share basis; providing

---

[8] The Summary Notice will be published in *Investor's Business Daily* and transmitted over *PR Newswire*.

a brief statement explaining the reasons why the parties are proposing the Settlement; stating the maximum amount of attorney's fees and expenses (both on an aggregate and average per share basis) that Lead Plaintiff's Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Plaintiff's Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). Both forms of Notice will also disclose the date, time and location of the final Settlement Hearing and the deadlines for seeking exclusion and submitting Proof of Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Plaintiff's Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Lead Plaintiff also requests that the Court appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator, which has extensive relevant experience. *See* Gardner Decl. Ex. 6. Epiq is a nationally recognized notice and claims administration firm. Its staff consists of experienced CPA's, IT specialists and various other professionals with substantial experience in notice and claims administration.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The proposed Notice plan readily meets these standards and is typical of Notice plans in similar actions.

## CONCLUSION

Lead Plaintiff respectfully requests that the Court (1) preliminarily approve the proposed Settlement and schedule a Settlement Hearing; (2) preliminarily certify the proposed Settlement

Class and its representatives; and (3) approve the proposed forms and methods of providing notice.[9]

Dated: May 6, 2013

LABATON SUCHAROW LLP

By:  /s/ Jonathan Gardner
Jonathan Gardner
Angelina Nguyen
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiff*

ROBBINS GELLER RUDMAN
  & DOWD LLP
Jack Reise
Florida Bar No. 058149
jreise@rgrdlaw.com
Stephen R. Astley
Florida Bar No. 139254
sastley@rgrdlaw.com
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

*Liaison Counsel for Lead Plaintiff*

---

[9] For the Court's convenience, a proposed form of Preliminary Approval Order – which has previously been reviewed and approved as to form by the Settling Parties – is submitted herewith. Assuming the Court's preliminary approval of the Settlement, the Court will need to fill in the date and time of the Settlement Hearing at ¶ 5 of the proposed Preliminary Approval Order. (Other dates in the Order are keyed off the date of the Settlement Hearing or entry of the Order). To allow sufficient time for dissemination of the Notice, while also taking into account Class members' interests in avoiding undue delay, Lead Plaintiff respectfully proposes that the Court schedule the Settlement Hearing to occur no sooner than 90 days after entry of the Order.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 6, 2013, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Jonathan Gardner
Jonathan Gardner