UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

|  |  |
|---|---|
| CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> LENDER PROCESSING SERVICES, INC., *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 3:10-cv-01073-TJC-JBT |

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS
AND INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

MOTION........................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 2

I.      PRELIMINARY STATEMENT ............................................................................ 2

II.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
        APPROPRIATE....................................................................................................... 4

III.    THE SETTLEMENT MERITS FINAL APPROVAL ............................................ 5

        A.     The Standards for Judicial Approval of Class Action Settlements.................. 5

        B.     The Settlement is the Result of Good Faith, Arm's-Length
               Negotiations Conducted by Informed and Experienced Counsel .................... 7

        C.     The Settlement is Fair, Adequate, and Reasonable Under the *Bennett*
               Factors .............................................................................................................. 8

               1.     The Potential Obstacles to Success at Trial Support Approval
                      of the Settlement ..................................................................................... 8

               2.     Considering the Range of Possible Recovery, the Settlement
                      Amount is Clearly Within the Range of Reasonableness ..................... 11

               3.     The Complexity, Expense, and Likely Duration of Continued
                      Litigation Support Approval of the Settlement..................................... 13

               4.     The Reaction of Settlement Class Members Supports Approval
                      of the Settlement ................................................................................... 14

               5.     The Stage of Proceedings Supports Approval of the Settlement......... 15

        D.     The Recommendation of Experienced Counsel Heavily Favors
               Approval of the Settlement ............................................................................ 16

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION.................... 16

V.      CONCLUSION...................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Access Now, Inc. v. Claire's Stores, Inc.*,
   No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002)............................................14

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
   211 F.R.D. 457 (S.D. Fla. 2002)........................................................................................5, 7

*Beavers v. Am. Cast Iron Pipe Co.*,
   164 F. Supp. 2d 1290 (N.D. Ala. 2001).................................................................................11

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)..................6, 10, 11, 15

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ................................................................................5, 6, 8, 13

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) ....................................5

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) (*en banc*) ..............................................................................7

*Canupp v. Sheldon*,
   No. 2:04-cv-260, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009)........................................6, 7

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228 (5th Cir. 1982) ...............................................................................................16

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................................7

*Garst v. Franklin Life Ins. Co.*,
   No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 28, 1999) ................ *passim*

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................12

*Holman v. Student Loan Xpress, Inc.*,
   No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009)............................8

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................12

*N. Star Capital Acquisitions, LLC v. Krig,*
  Nos. 07-264, 07-265, 07-266, 08-1016, 2011 WL 65662 (M.D. Fla. Jan. 10, 2011) ...............5

*Perez v. Asurion Corp.,*
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..................................................................................8

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985)..............................................................................................................4

*Ressler v. Jacobson,*
  822 F. Supp. 1551 (M.D. Fla. 1992) ..............................................................................14, 15

*In re Smith,*
  926 F.2d 1027 (11th Cir. 1991) .......................................................................................7, 16

*Strube v. Am. Equity Inv. Life Ins. Co.,*
  226 F.R.D. 688 (M.D. Fla. 2005)...........................................................................5, 9, 12, 16

*In re Sunbeam Sec. Litig.,*
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) .........................................................................11, 12, 16

*In re U.S. Oil & Gas Litig.,*
  967 F.2d 489 (11th Cir. 1992) .........................................................................................5, 6

*Warren v. Tampa,*
  693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd,* 893 F.2d 347 (11th Cir. 1989) ........................5, 7

*In re WorldCom, Inc. Sec. Litig.,*
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)..................................................................................14

*Zuckerman v. Smart Choice Auto Group, Inc.,*
  No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) ........................10

**STATUTES**

Fed. R. Civ. P. 23 ...................................................................................................1, 5, 6, 7

**OTHER AUTHORITIES**

William B. Rubenstein, Alba Conte & Herbert B. Newberg,
  4 Newberg on Class Actions § 11:51 (4th ed. 2010) .............................................................7

## MOTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Baltimore County Employees' Retirement System ("Lead Plaintiff") and the Settlement Class in the above-captioned action (the "Action"), respectfully submit this motion for final approval of the settlement of this class action for $14,000,000.00 in cash (the "Settlement") and approval of the Plan of Allocation of the net settlement proceeds.   The terms and conditions of the Settlement are set forth in the Stipulation and Agreement of Settlement dated January 28, 2013 (the "Stipulation"), which was previously filed with the Court.[1]   *See* ECF No. 93-1.   The Stipulation resolves Lead Plaintiff's and the Settlement Class's claims against all Defendants. The Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

This motion is supported by the accompanying Declaration of Jonathan Gardner in Support of Lead Plaintiff's Motions for Final Approval of Proposed Class Action Settlement, Plan of Allocation, Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Lead Plaintiff Expenses (the "Gardner Declaration" or "Gardner Decl."), which is incorporated by reference.[2]

---

[1]      All capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation.

[2]      The Gardner Declaration contains a more detailed history of the Action, the claims asserted, the investigation undertaken, the negotiation and substance of the settlement, the substantial risks of the Action, and the reasonableness of the fee request.  All exhibits referenced herein are annexed to the Gardner Declaration.   For clarity, citations to exhibits that themselves have exhibits, will be referenced as "Ex. __-__."   The first numerical reference is the designation of the entire exhibit attached to the Gardner Declaration and the second reference is to the exhibit designation within the exhibit itself.

## <u>MEMORANDUM OF LAW</u>

**I.     PRELIMINARY STATEMENT**

The Settlement was reached only after Lead Plaintiff's Counsel, *inter alia*: (i) conducted an extensive investigation into the underlying facts, including identifying 915 potential witnesses, contacting 182, and interviewing approximately 71 former LPS employees and other persons with relevant knowledge; (ii) thoroughly researched the law pertinent to the Settlement Class Members' claims and Defendants' defenses; (iii) prepared and filed three detailed amended class action complaints specifying Defendants' violations of the federal securities laws; (iv) successfully opposed portions of Defendants' motion to dismiss the Amended Class Action Complaint (the "AC") as to falsity and loss causation; (v) prepared an in-depth mediation statement that analyzed the merits of Lead Plaintiff's claims and the defenses available to Defendants; (vi) consulted with economic experts to fully evaluate the strength of Lead Plaintiff's damages claims and Defendants' defenses; and (vii) conducted confirmatory discovery including reviewing documents produced by LPS and interviewing LPS personnel with extensive knowledge about the issues raised in the Action. *See* Gardner Decl. ¶6.  The Settling Parties ultimately entered into settlement negotiations and a settlement was reached at a time when Lead Plaintiff and Lead Plaintiff's Counsel were well informed of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement.

As discussed herein and in the Gardner Declaration, Lead Plaintiff faced significant risks in obtaining a more favorable outcome after continued litigation.  For example, the Complaint could be dismissed for failure to satisfy the pleading standards for scienter

imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (the same grounds that warranted dismissal of the AC), or after one or more motions for summary judgment following the completion of fact and expert discovery. This is particularly true given the complexities of the issues involved in the Action, including the multiple corrective disclosures alleged and whether those disclosures sufficiently related to the alleged misrepresentations. Indeed, there is considerable dispute between the Settling Parties over loss causation, including whether the market was aware, prior to the alleged corrective disclosures, of problems with LPS's attorney network and whether the market considered information regarding the document execution practices at an LPS subsidiary material. If the Court or a jury accepted any of these arguments at summary judgment and/or trial, it would have severely reduced or eliminated the Settlement Class's damages. In short, Lead Plaintiff faced numerous obstacles in proving both liability and damages. *See* Gardner Decl. ¶¶37-44.

Lead Plaintiff's Counsel, who are well-respected and experienced in prosecuting securities class actions, are of the opinion that the Settlement is a very good result and in the best interest of the Settlement Class. This conclusion is based on a complete analysis of the evidence, the substantial risks, expense and uncertainties in continuing the Action, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to the present Action.

Members of the Settlement Class agree with Lead Plaintiff's Counsel's conclusion. Pursuant to the Court's Preliminary Approval Order, the Notice and Proof of Claim were mailed to 66,447 potential Settlement Class Members and nominees. *See* Ex. 2 ¶¶9-11.

Additionally, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on August 1, 2013. *Id.* at ¶12. The Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Allocation, or to Lead Plaintiff's Counsel's application for attorneys' fees and expenses. The time to file objections will expire on October 4, 2013. To date, no objections have been raised to any aspect of the Settlement, the Plan of Allocation, or Lead Plaintiff's Counsel's request for attorneys' fees and expenses. Three requests for exclusion have been received, of which only two are valid, including an opt-out complaint that was filed on behalf of a group of seven (7) related funds ("Opt-Out Complaint"). The Opt-Out Complaint, *Maverick Fund, L.D.C. et al. v. Lender Processing Svs, Inc. et al.*, No. 13-cv-5474-DLC, was filed on August 6, 2013 in the Southern District of New York and alleges violations of both the federal securities laws and state law.

The overwhelming acceptance of the Settlement by the Settlement Class supports a finding that the Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved.

## II.      FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

A necessary part of the settlement process for class actions is the certification of the class before or at the time the settlement is approved by the court. It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged securities fraud. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[Lead] [P]laintiffs to pool claims

which would be uneconomical to litigate individually …[M]ost of the [Lead P]laintiffs would have no realistic day in court if a class action were not available").

The Court previously granted preliminary certification of the Settlement Class for settlement purposes only.   *See* Preliminary Approval Order, ECF No. 98 at ¶¶2-3; Preliminary Approval Brief, ECF No. 92 at 10-16.   Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now finally certify the Settlement Class.  *See N. Star Capital Acquisitions, LLC v. Krig*, Nos. 07-264, 07-265, 07-266, 08-1016, 2011 WL 65662, at *7 (M.D. Fla. Jan. 10, 2011) (certifying class action for settlement purposes); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (same).

## III.   THE SETTLEMENT MERITS FINAL APPROVAL

### A.   The Standards for Judicial Approval of Class Action Settlements

There is a "strong judicial policy favoring settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984);[3] *accord Strube*, 226 F.R.D. at 697; *Warren v. Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

"[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'"  *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Warren*, 693 F. Supp. at 1054.  As the court in *U.S. Oil & Gas* noted:

---

[3]      Citations and footnotes are omitted, and emphasis is added, unless otherwise noted.

> Complex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

967 F.2d at 493.

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district court must find that it is "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett*, 737 F.2d at 986; *accord Strube*, 226 F.R.D. at 697. "The Court is required to make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren*, 693 F. Supp. at 1054.

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). In addition, approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *Bennett*, 737 F.2d at 987 (same).

Finally, in evaluating a settlement, the court "is entitled to rely on the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 2:04-cv-260, 2009 WL

4042928, at *5 (M.D. Fla. Nov. 23, 2009); *Ass'n for Disabled Ams.*, 211 F.R.D. at 470 (same); *see also Warren*, 693 F. Supp. at 1060 (in approving settlement of class action, "[t]he Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation").  Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[4] *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703.

Here, as set forth *infra*, the Settlement clearly warrants the Court's approval.

**B.      The Settlement is the Result of Good Faith, Arm's-Length
          Negotiations Conducted by Informed and Experienced Counsel**

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties.  *See Cannup*, 2009 WL 4042928, at *9 (citing *Bennett*, 737 F.2d at 987 n.9) ("In determining . . . fraud or collusion, the [C]ourt examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior . . . on the part of class counsel.").  Courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."  William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:51 (4th ed. 2010).

Here, the Settlement satisfies this threshold consideration.  Lead Plaintiff negotiated the Settlement on a well-informed basis and with a thorough understanding of the merits and

---

[4]      Opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (*en banc*).

values of the Settling Parties' claims and defenses.  Indeed, the Settlement is the product of informed arm's-length negotiations before an impartial and experienced mediator, Jed Melnick, Esq. of JAMS.  *See* Gardner Decl. ¶¶7, 33; *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or collusion" where a "settlement [was] the product of. . . arm's length, 'protracted and contentious' negotiation with a mediator"); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (parties' use of an "experienced and well-respected mediator" supported the court's finding that the settlement was fair and not the product of collusion).

Moreover, Lead Plaintiff's Counsel has extensive experience in securities fraud class action litigation and well-deserved reputations for tenaciously prosecuting claims on behalf of plaintiffs and classes.  *See, e.g.*, Gardner Decl. ¶¶65-66; Exs. 3-C and 4-C.  Indeed, Lead Plaintiff's Counsel is responsible for many of the largest class action settlements achieved and have decades of experience in successfully prosecuting some of the most complex class actions.  *See* Exs. 3-C and 4-C.

### C.    The Settlement is Fair, Adequate, and Reasonable Under the *Bennett* Factors

#### 1.    The Potential Obstacles to Success at Trial Support Approval of the Settlement

The first *Bennett* factor is "the likelihood of success at trial."  *Bennett*, 737 F.2d at 986.  "In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement is fair, adequate and reasonable, the Court should make only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and

costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999); *accord Strube*, 226 F.R.D. at 697-98.

Although Lead Plaintiff believes that its claims against Defendants are meritorious, there were significant obstacles to success at trial.  For example, even if the Complaint survived the motion to dismiss, which was pending at the time of settlement, Lead Plaintiff faced the risk that it would not be able to prove scienter of Defendants, which is well-recognized as a difficult and uncertain element in any securities fraud case.  On summary judgment or at trial, Defendants would likely argue that Lead Plaintiff cannot prove that the Individual Defendants were aware of the allegedly fraudulent document execution practices. Defendants would likely argue that none of the Individual Defendants were indicted or charged with respect to the Company's allegedly fraudulent practices and that LPS cooperated with the federal and state investigations, facts which undercut Defendants' scienter.  Supporting Defendants' argument is the fact that Lorraine Brown, the founder and President of DocX, indicated in her plea agreement that she hid the improper document execution practices from LPS executives.  *See* Gardner Decl. ¶¶37, 39.

Defendants would also likely argue that Lead Plaintiff would be unable to prove that Defendants fraudulently misrepresented its revenues, an argument supported by the lack of a restatement during the Class Period.  Likewise, Defendants would challenge Lead Plaintiff's ability to prove that LPS's projected financial performance was later proven inaccurate or that LPS's attorney network was not "independent" since no individual suit or government

investigation related to LPS's attorney network has led to any finding against the Company, and LPS's clients continue to use the attorney network.  *See id*. ¶¶37-38.

Lead Plaintiff not only faced risks in proving the liability of Defendants but also faced risks with respect to loss causation and proof of damages.  The Complaint's loss causation theory is premised on multiple corrective disclosures between April 16, 2009 and October 4, 2010.  Defendants would likely raise issues about the connection between these disclosures and the alleged misrepresentations.  Additionally, Defendants would also dispute whether the market was aware, prior to the alleged corrective disclosures, of the Company's attorney network, fee-splitting and independence issues, and whether the market considered LPS's foreclosure documentation practices to be material.  *See id*. ¶¶37, 40-42.

These issues would have been before the jury and would have required significant expert testimony and analysis.  As in any securities class action, proof of damages would have been a disputed matter subject to conflicting expert testimony, and it would not be possible to predict with any confidence how a jury would resolve such a dispute.  *See, e.g., Zuckerman v. Smart Choice Auto Group, Inc*., No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

As the court held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement."  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *accord Behrens*, 118 F.R.D. at 540 (approving class action

settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *see Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Because of the risks associated with continuing to litigate and proceeding to trial, including overcoming the pending motion to dismiss and likely summary judgment motions, there was a danger that Lead Plaintiff would not have prevailed against Defendants on any of its claims, in which case the Settlement Class would have received nothing.  Therefore, Lead Plaintiff's Counsel believes that the Settlement obtained is in the best interest of the Settlement Class.

### 2.    Considering the Range of Possible Recovery, the Settlement Amount is Clearly Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'"  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined'"); *accord Behrens*, 118 F.R.D. at 541.

"[T]he Court must determine 'whether [the settlement amount] falls within the "range of reasonableness," not whether it is the most favorable possible result in the litigation.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)).  As *Garst* observed:

> "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

*Garst*, 1999 U.S. Dist. LEXIS 22666, at *64-*65; *accord Sunbeam*, 176 F. Supp. 2d at 1332; *Behrens*, 118 F.R.D. at 542.

While Lead Plaintiff's Counsel believe that the damages suffered by Settlement Class Members exceed the amount of the Settlement, the facts strongly militate in favor of approving the Settlement. According to Lead Plaintiff's damages expert, maximum class-wide damages are approximately $250 million, assuming full recovery of the stock drops following each of the alleged corrective disclosures. *See* Gardner Decl. ¶45. This figure resulted from analysis and modeling that found statistically significant declines in the value of LPS stock on days when the loss causation disclosures pled by Lead Plaintiff were made. *Id*.

The Settlement, therefore, represents approximately 5.6% of the maximum estimated damages amount. *Id*. This percentage compares favorably with other court-approved settlements in PSLRA cases in this and other circuits. *See, e.g., Strube*, 226 F.R.D. at 698 (approving settlement equal to 2% of estimated potential recovery); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving $4.9 million settlement equal to 3% of estimated damages and noting that the "estimated recovery of three percent of the total damages estimated by the plaintiffs, does not meaningfully diverge from the range of reasonableness for settlements of similar-sized securities class actions"); *Hicks*

*v. Morgan Stanley,* No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving $10 million settlement equal to 3.8% of damages).

Additionally, a study of securities class action settlements by NERA Economic Consulting, a firm that frequently provides damages expertise to defendants in securities cases, reported that between January 1996 and December 2012, since the passage of the PSLRA, median settlement amounts in securities class actions ranged from $3.7 million to $12.0 million. *See* Dr. Renzo Comolli *et al.*, *Recent Trends in Securities Class Litigation: 2012 Full-Year Review* (NERA Jan. 29, 2013) at 28, Ex. 6. Additionally Cornerstone Research reported that approximately 79 percent of post-PSLRA settlements have settled for under $25 million. *See* Ellen Ryan & Laurie E. Simmons, *Securities Class Action Settlements: 2012 Review and Analysis*, at 5 (Cornerstone Research 2013), Ex. 7.

Therefore, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" and this factor favors approval of the Settlement. *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

### 3.  The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement

Assuming that the Court denies Defendants' pending motion to dismiss, further litigation against Defendants would necessarily involve significant additional time and money for document and deposition discovery, expert discovery, class certification, summary judgment proceedings, trial, and possible appeals. In light of the costs and delays inherent in litigating this case to trial, the "unpredictability of a lengthy and complex . . . trial" – as well

as the likelihood of further appellate activity if Lead Plaintiff were to prevail at trial – "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (approving class action settlement after finding that although the litigation prior to the settlement "was a costly undertaking for all parties . . . [n]evertheless, further litigation would have resulted in considerable additional expense").

A settlement at this juncture results in a present recovery without the considerable risk, expense, and delay of further litigation.  Therefore, this factor weighs in favor of approval of the Settlement.

### 4.    The Reaction of Settlement Class Members Supports Approval of the Settlement

The reaction of class members to a proposed settlement is a significant factor to be considered and the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy."  *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement"); *Garst*, 1999 U.S. Dist. LEXIS 22666, at 71-72 ("small amount of opposition strongly supports approving the Settlement").

To date, 66,447 Notices and Proofs of Claim have been mailed to Settlement Class Members.  *See* Ex. 2 ¶¶9-11.  The Notice informed Settlement Class Members of their right to exclude themselves from the Settlement Class or their right to object to any aspect of the Settlement, the Plan of Allocation, and/or Lead Plaintiff's Counsel's application for an award

of attorneys' fees and expenses.  *See* Ex. 2-A at 7-8.  While the deadline for objecting to the Settlement has not passed, to date, there have been no objections, and only three requests for exclusion, of which only two are valid.[5]  *See* Ex. 2 ¶21.

### 5.    The Stage of Proceedings Supports Approval of the Settlement

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544.  "Comprehensive discovery is not necessary, 'only some reasonable amount of discovery' is required."  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *70; *accord Ressler*, 822 F. Supp. at 1555.

Here, the Settlement was reached only after Lead Plaintiff filed detailed complaints based on its comprehensive investigation, which included identifying more than 915 potential witnesses, contact with 182, and interviews with approximately 71 individuals with knowledge of the issues presented.  *See* Gardner Decl. ¶¶6, 26-27.  Also in connection with the pre-filing investigation, Lead Plaintiff thoroughly reviewed and analyzed all publicly available information regarding the Company, including, but not limited to, its SEC filings, press releases, and securities analysts' reports about LPS, as well as pleadings and documents from other litigation against the Company and other related individuals and entities.  *Id*. Lead Plaintiff's Counsel also conducted confirmatory discovery, reviewing approximately

---

[5]      Settlement Class Members have until October 4, 2013 to request exclusion from the Settlement Class or object to the matters to be considered during the Settlement Hearing.  Should any objections and/or exclusion requests be received, they will be addressed by Lead Plaintiff's Counsel in its reply papers that will be filed on or before October 18, 2013.

35,000 pages of core documents and interviewing two highly placed LPS employees who had extensive knowledge concerning the issues raised in this Action. *Id.* ¶34.

Accordingly, Lead Plaintiff and Lead Plaintiff's Counsel had a complete understanding of the facts of the case when negotiating the Settlement such that this factor favors approval of the Settlement. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

> **D.    The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement**

The Court is entitled to rely on the judgment of counsel, and, indeed, "'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* at 539 (quoting *Cotton*, 559 F.2d at 1330); *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703. Lead Plaintiff's Counsel strongly endorses the Settlement. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Id.* at 703.

## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982).

The Plan of Allocation, fully described in the Notice, provides a fair and equitable method of dividing the Net Settlement Fund among Settlement Class Members who submit

timely and valid Proof of Claim forms ("Authorized Claimants").  It was formulated with the assistance of a consulting damages expert who analyzed the movement of LPS's common stock after the alleged false and misleading statements made by Defendants and after the alleged corrective disclosures.  It takes into account the portion of the stock drops attributable to the alleged fraud.  The Plan of Allocation was given considerable thought and attention to assure that the net settlement proceeds would be fairly and equitably distributed based upon the amount of inflation in the prices of LPS common stock during the Class Period that was attributable to the alleged wrongdoing.  *See* Gardner Decl. ¶¶52-53.

The Plan of Allocation provides for the calculation of each claimant's "Recognized Loss," which will be calculated for each acquisition/purchase of LPS common stock made during the Class Period.  The calculation of the "Recognized Loss Per Share" will depend upon when the shares were purchased or sold, and whether it was held until the conclusion of the Class Period or, if not, when it was sold.  *Id.* ¶54.

Lead Plaintiff's Counsel believe that the Plan of Allocation set forth in the Notice is fair and reasonable, and respectfully submit that it should be approved by the Court.

## V.        CONCLUSION

For the reasons stated herein and in the Gardner Declaration, Lead Plaintiff respectfully requests that the Court (i) finally approve the proposed Settlement as fair, reasonable, and adequate and enter the proposed Judgment; (ii) grant final certification of the Settlement Class; and (iii) enter the proposed Order approving the Plan of Allocation. Proposed orders will be submitted with Lead Plaintiff's reply papers, after the deadline for seeking exclusion and objecting have passed.

Dated: September 20, 2013

**LABATON SUCHAROW LLP**

By:  _/s/ Jonathan Gardner_
Jonathan Gardner
jgardner@labaton.com
Angelina Nguyen
anguyen@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

_Lead Counsel for Lead Plaintiff_

**ROBBINS GELLER RUDMAN
   & DOWD LLP**
Jack Reise
Florida Bar No. 058149
jreise@rgrdlaw.com
Stephen R. Astley
Florida Bar No. 139254
sastley@rgrdlaw.com
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

_Liaison Counsel for Lead Plaintiff_

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 20, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all counsel of record.


*/s/ Jonathan Gardner*
JONATHAN GARDNER

**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiff*