UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>LENDER PROCESSING SERVICES, INC., *et al.*, )<br><br>Defendants. ) | No. 3:10-cv-01073-TJC-JBT |

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, AS AMENDED, AND PLAN OF ALLOCATION OF
SETTLEMENT PROCEEDS AND INCORPORATED MEMORANDUM OF LAW**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ ii

MOTION ............................................................................................................. 1

MEMORANDUM OF LAW ............................................................................... 2

I.      PRELIMINARY STATEMENT ............................................................... 2

II.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
        APPROPRIATE ......................................................................................... 5

III.    THE SETTLEMENT, AS AMENDED, MERITS FINAL APPROVAL ................... 6

        A.      The Standards for Judicial Approval of Class Action Settlements ................ 6

        B.      The Settlement, as Amended, is the Result of Good Faith, Arm's-
                Length Negotiations Conducted by Informed and Experienced Counsel ......... 8

        C.      The Settlement, as Amended, is Fair, Adequate, and Reasonable Under
                the *Bennett* Factors ........................................................................... 9

                1.      The Potential Obstacles to Success at Trial Support Approval
                        of the Settlement, as Amended ............................................... 9

                2.      Considering the Range of Possible Recovery, the Settlement
                        Amount is Clearly Within the Range of Reasonableness .................. 12

                3.      The Complexity, Expense, and Likely Duration of Continued
                        Litigation Support Approval of the Settlement, as Amended ............ 15

                4.      The Reaction of Settlement Class Members Supports Approval
                        of the Settlement, as Amended ............................................... 16

                5.      The Stage of Proceedings Supports Approval of the Settlement,
                        as Amended ...................................................................... 17

        D.      The Recommendation of Experienced Counsel Heavily Favors
                Approval of the Settlement, as Amended ......................................... 18

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ..................... 19

V.      CONCLUSION ....................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Access Now, Inc. v. Claire's Stores, Inc.*,
  No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002)............................................16

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002).......................................................................................6, 7

*Beavers v. Am. Cast Iron Pipe Co.*,
  164 F. Supp. 2d 1290 (N.D. Ala. 2001)..................................................................................12

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ......................... *passim*

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ............................................................................... 6, 7, 9, 15

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) ..................................6,7

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) (*en banc*) ...............................................................................8

*Canupp v. Sheldon*,
  No. 2:04-cv-260, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009).........................................7, 8

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ...............................................................................................19

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...............................................................................................8

*Garst v. Franklin Life Ins. Co.*,
  No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 28, 1999) ................ *passim*

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................14

*Holman v. Student Loan Xpress, Inc.*,
  No. 8:08-cv-305-T-23MAP, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) ...........................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .........................................................................................14

*N. Star Capital Acquisitions, LLC v. Krig*,
    Nos. 07-264, 07-265, 07-266, 08-1016, 2011 WL 65662 (M.D. Fla. Jan. 10, 2011)...............6

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ....................................................................................9

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...................................................................................................................5

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992).......................................................................15, 16, 17

*In re Smith*,
    926 F.2d 1027 (11th Cir. 1991) ...............................................................................................8

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005)......................................................................6, 7, 8, 10, 14

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...........................................................................12, 13

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ........................................................................................... 6, 7

*Warren v. Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd,* 893 F.2d 347 (11th Cir. 1989) .........................6, 7

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................15

*Zuckerman v. Smart Choice Auto Group, Inc.*,
    No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) .........................11

**STATUTES**

Fed. R. Civ. P. 23.................................................................................................................1, 7

**OTHER AUTHORITIES**

William B. Rubenstein, Alba Conte & Herbert B. Newberg,
    4 Newberg on Class Actions § 11:51 (4th ed. 2010) ...............................................................8

## MOTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Baltimore County Employees' Retirement System ("Lead Plaintiff") and the Settlement Class in the above-captioned action (the "Action"), respectfully submit this motion for final approval of the settlement of the Action for $14,000,000.00 in cash (the "Settlement"), as amended, and approval of the Plan of Allocation of the net settlement proceeds.[1] Pursuant to the Amendment, up to $900,000 of the Settlement Amount will be set aside to be used by LPS[2] to pay and/or defend the Opt-Out Action ("Opt-Out Set-Aside"). If less than $900,000 is used by LPS, the amount remaining will be available for distribution to the Settlement Class. The terms and conditions of the Settlement are set forth in the Stipulation, which was previously filed with the Court, and the Amendment, dated and filed October 22, 2013. The Stipulation and Amendment resolve Lead Plaintiff's and the Settlement Class's claims against all Defendants. The Settlement, as amended, and Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

This motion is supported by the accompanying Declaration of Jonathan Gardner in Support of Motions for Final Approval of (I) Proposed Class Action Settlement, as

---

[1] All capitalized terms used herein, unless otherwise defined, have the same meaning as that set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), dated January 28, 2013, and filed May 6, 2013 (ECF No. 93-1), and the First Amendment to Stipulation and Agreement of Settlement (the "Amendment"), dated and filed October 22, 2013 (ECF No. 106-1).

[2] As a result of a merger transaction, on January 3, 2014 the entity known as Lender Processing Services, Inc. ("LPS") became Black Knight InfoServ, LLC ("BKIL"). All references to LPS in this motion and memorandum; Lead Plaintiff's Counsel's Modified Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses and Lead Plaintiff Expenses and Incorporated Memorandum of Law; and the Declaration of Jonathan Gardner in Support of Motions for Final Approval of (I) Proposed Class Action Settlement, as Amended, and Plan of Allocation and (II) Lead Plaintiff's Counsel's Modified Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses, are intended, with respect to any period of time following January 3, 2014, to refer to BKIL. Lead Plaintiff's Counsel have conferred with Defendants' Counsel and it is the understanding and intention of the Settling Parties that all references to LPS in the Stipulation and Amendment, shall refer, with respect to any period of time following January 3, 2014, to BKIL.

Amended, and Plan of Allocation and (II) Lead Plaintiff's Counsel's Modified Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Gardner Declaration" or "Gardner Decl."), which is incorporated by reference.[3]

## MEMORANDUM OF LAW

### I.      PRELIMINARY STATEMENT

The Settlement, as amended, was reached only after Lead Plaintiff's Counsel, *inter alia*: (i) reviewed and analyzed documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) reviewed publicly available information, including press releases, news articles and other public statements issued by or concerning the Company and the Individual Defendants, as well as research reports issued by financial analysts concerning the Company; (iii) reviewed other publicly available information and data concerning the Company, including information concerning investigations conducted by the U.S. Department of Justice, U.S. Attorney General and the Attorneys General of multiple states; (iv) reviewed pleadings filed in other pending litigation naming certain Defendants herein as defendants or nominal defendants; (v) researched the applicable law governing the claims and potential defenses; (vi) identified 915 potential witnesses, contacted 182, and interviewed approximately 71 former LPS employees and other persons with relevant knowledge; (vii) consulted with experts on valuation, damages, and causation issues; (viii) prepared three fact-intensive amended class action complaints; (ix) successfully opposed

---

[3]   The Gardner Declaration contains a more detailed history of the Action, the claims asserted, the investigation undertaken, the negotiation and substance of the Settlement, the substantial risks of the Action, and the reasonableness of the fee request.   All exhibits referenced herein are annexed to the Gardner Declaration.   For clarity, citations to exhibits that themselves have exhibits, will be referenced as "Ex. __-__." The first numerical reference is the designation of the entire exhibit attached to the Gardner Declaration and the second reference is to the exhibit designation within the exhibit itself.

Defendants' motion to dismiss the Amended Class Action Complaint (the "AC") with regard to the falsity of the alleged misstatements and loss causation; (x) conducted confirmatory discovery including reviewing documents produced by LPS and interviewing two LPS personnel with extensive knowledge about the issues raised in the Action; and (xi) negotiated extensively with Defendants to amend the Settlement when there was a threat of termination such that individual Settlement Class Members will recover no less than they would have recovered under the original Settlement, and to ensure the Settlement, as amended, remains fair, reasonable, and adequate.[4]   *See* Gardner Decl. ¶13.   The Settling Parties entered into settlement negotiations, and the Settlement and Amendment were reached, at a time when Lead Plaintiff and Lead Plaintiff's Counsel were well informed of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement.

As discussed herein and in the Gardner Declaration, Lead Plaintiff faced significant risks in obtaining a more favorable outcome after continued litigation.   For example, the Complaint could have been dismissed for failure to satisfy the pleading standards for scienter imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (the same grounds that warranted dismissal of the AC), or after one or more motions for summary judgment following the completion of fact and expert discovery.   This is particularly true given the complexities of the issues involved in the Action, including the multiple corrective disclosures alleged and whether those disclosures sufficiently related to the alleged misrepresentations.   Indeed, there is considerable dispute between the Settling Parties over loss causation, including whether the market was aware, prior to the alleged corrective

---

[4]   Moreover, Lead Plaintiff's Counsel will request fees based only on the $13.1 million figure and any additional amount that reverts back to the Settlement Fund following resolution of the Opt-Out Action.

disclosures, of the nature of LPS's attorney network and whether the market considered information regarding the document execution practices at an LPS subsidiary material.  If the Court or a jury accepted any of these arguments at summary judgment and/or trial, it would have severely reduced or eliminated the Settlement Class's damages.  In short, Lead Plaintiff faced numerous obstacles in proving both liability and damages.  *See* Gardner Decl. ¶¶48-55.

Lead Plaintiff's Counsel, who are well-respected and experienced in prosecuting securities class actions, are of the opinion that the Settlement, as amended, is a very good result and in the best interest of the Settlement Class.  This conclusion is based on a complete analysis of the evidence, the substantial risks, expense and uncertainties in continuing the Action, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to the present Action.

Members of the Settlement Class appear to agree with Lead Plaintiff's Counsel's conclusion.  Pursuant to the Court's Preliminary Approval Order (ECF No. 98) relating to the original Settlement, the Notice and Proof of Claim was mailed to 67,471 potential Settlement Class Members and nominees.  *See* ECF No. 105.  The Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Allocation, or to Lead Plaintiff's Counsel's application for attorneys' fees and expenses.  *See* ECF No. 101-2 at Exhibit A.  The time to file objections to the original Settlement expired on October 4, 2013.  No objections were raised to any aspect of the Settlement, the Plan of Allocation, or Lead Plaintiff's Counsel's request for attorneys' fees and expenses.  Four

requests for exclusion were received, of which three are valid, including the exclusion request from the Opt-Outs.[5]

Pursuant to the Court's Second Preliminary Approval Order, the Supplemental Notice was mailed to 71,361 potential Settlement Class Members and nominees. *See* Ex. 1 ¶¶5-8. The Supplemental Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, as amended, and that the deadline to file Proof of Claim forms had been extended to January 21, 2014. *See* Ex. 1-A. The time to file objections expires on January 31, 2014. To date, no objections have been raised to any aspect of the Settlement, as amended, the Plan of Allocation, or Lead Plaintiff's Counsel's modified request for attorneys' fees and expenses.

The overwhelming acceptance of the Settlement, as amended, by the Settlement Class supports a finding that the Settlement, as amended, and Plan of Allocation are fair, reasonable, and adequate and should be approved.

## II.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

A necessary part of the settlement process for class actions is the certification of the class before or at the time the settlement is approved by the court. It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged securities fraud. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[Lead] [P]laintiffs to pool claims

---

[5]   Settlement Class Members were not given a second opportunity to opt-out of the Settlement Class in connection with the Settlement, as amended.

which would be uneconomical to litigate individually …[M]ost of the [Lead P]laintiffs would have no realistic day in court if a class action were not available").

The Court previously granted preliminary certification of the Settlement Class for settlement purposes only.  *See* Preliminary Approval Order, ECF No. 98 at ¶¶2-3.  Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now finally certify the Settlement Class.  *See N. Star Capital Acquisitions, LLC v. Krig*, Nos. 07-264, 07-265, 07-266, 08-1016, 2011 WL 65662, at *7 (M.D. Fla. Jan. 10, 2011) (certifying class action for settlement purposes); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (same).

## III.   THE SETTLEMENT, AS AMENDED, MERITS FINAL APPROVAL

### A.   The Standards for Judicial Approval of Class Action Settlements

There is a "strong judicial policy favoring settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *accord Strube*, 226 F.R.D. at 697; *Warren v. Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

"[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'"  *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984);[6] *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Warren*, 693 F. Supp. at 1054.  As the court in *U.S. Oil & Gas* noted:

> Complex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.

---

[6]   Internal citations and footnotes are omitted, and emphasis is added, unless otherwise noted.

> Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

967 F.2d at 493.

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district court must find that it is "'fair, adequate and reasonable and is not the product of collusion between the parties.'"  *Bennett*, 737 F.2d at 986; *accord Strube*, 226 F.R.D. at 697.  "The Court is required to make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable."  *Warren*, 693 F. Supp. at 1054.

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).  In addition, approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court."  *U.S. Oil & Gas*, 967 F.2d at 493; *Bennett*, 737 F.2d at 987 (same).

Finally, in evaluating a settlement, the court "is entitled to rely on the judgment of experienced counsel for the parties."  *Canupp v. Sheldon*, No. 2:04-cv-260, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009);  *Ass'n for Disabled Ams.*, 211 F.R.D. at 470 (same); *see also Warren*, 693 F. Supp. at 1060 (in approving settlement of class action, "[t]he

Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation").  Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[7] *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703.

Here, as set forth *infra*, the Settlement, as amended, clearly warrants approval.

**B.     The Settlement, as Amended, is the Result of Good Faith, Arm's-Length Negotiations Conducted by Informed and Experienced Counsel**

A threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties.  *See Cannup*, 2009 WL 4042928, at *9 (citing *Bennett*, 737 F.2d at 987 n.9) ("In determining . . . fraud or collusion, the [C]ourt examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior . . . on the part of class counsel.").  Courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."  William B. Rubenstein, Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:51 (4th ed. 2010).

Here, the Settlement, as amended, satisfies this threshold consideration.  Lead Plaintiff negotiated the Settlement on a well-informed basis and with a thorough understanding of the merits and values of the Settling Parties' claims and defenses.  Indeed, the Settlement is the product of informed arm's-length negotiations before an impartial and

[7]     Opinions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (*en banc*).

experienced mediator, Jed Melnick, Esq. of JAMS.  *See* Gardner Decl. ¶¶14, 40; *Holman v. Student Loan Xpress, Inc*., No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (finding "no apparent fraud or collusion" where a "settlement [was] the product of. . . arm's length, 'protracted and contentious' negotiation with a mediator"); *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (parties' use of an "experienced and well-respected mediator" supported the court's finding that the settlement was fair and not the product of collusion).  Moreover, Lead Plaintiff negotiated extensively with Defendants to amend the Settlement following the Opt-Out Action to ensure that individual Settlement Class Members would recover no less than they would have recovered under the original Settlement.  *See* Gardner Decl. ¶13.

Lead Plaintiff's Counsel has extensive experience in securities fraud class action litigation and well-deserved reputations for tenaciously prosecuting claims on behalf of plaintiffs and classes.  *See, e.g*., Gardner Decl. ¶¶79-80; Exs. 3-C and 4-F.  Indeed, Lead Plaintiff's Counsel is responsible for many of the largest class action settlements achieved and have decades of experience in successfully prosecuting some of the most complex class actions.  *See* Exs. 3-C and 4-F.

   **C.     The Settlement, as Amended, is Fair, Adequate, and Reasonable Under the *Bennett* Factors**

         **1.     The Potential Obstacles to Success at Trial Support Approval of the Settlement, as Amended**

The first *Bennett* factor is "the likelihood of success at trial."  *Bennett*, 737 F.2d at 986.  "In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement, [as amended] is fair, adequate and reasonable, the Court should make

only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999); *accord Strube*, 226 F.R.D. at 697-98.

Although Lead Plaintiff believes that its claims against Defendants are meritorious, there were significant obstacles to success at trial. For example, even if the Complaint survived the motion to dismiss, which was pending at the time of settlement, Lead Plaintiff faced the risk that it would not be able to prove scienter of Defendants, which is well-recognized as a difficult and uncertain element in any securities fraud case. On summary judgment or at trial, Defendants would likely argue that Lead Plaintiff cannot prove that the Individual Defendants were aware of the allegedly fraudulent document execution practices. Defendants would likely argue that none of the Individual Defendants were indicted or charged with respect to the Company's allegedly fraudulent practices and that LPS cooperated with the federal and state investigations, facts which undercut Defendants' scienter. Supporting Defendants' argument is the fact that Lorraine Brown, the founder and President of DocX, indicated in her plea agreement that she hid the improper document execution practices from LPS executives. *See* Gardner Decl. ¶¶48, 50.

Defendants would also likely argue that Lead Plaintiff would be unable to prove that Defendants fraudulently misrepresented its revenues, an argument supported by the lack of a restatement during the Class Period. Likewise, Defendants would challenge Lead Plaintiff's ability to prove that LPS's projected financial performance was later proven inaccurate or that LPS's attorney network was not "independent" since no individual suit or government

investigation related to LPS's attorney network has led to any finding against the Company, and LPS's clients continue to use the attorney network.  *See id*. ¶¶48-49.

Lead Plaintiff not only faced risks in proving falsity and scienter but also faced risks with respect to loss causation and proof of damages.  The Complaint's loss causation theory is premised on multiple corrective disclosures between April 16, 2009 and October 4, 2010. Defendants would likely raise issues about the connection between these disclosures and the alleged misrepresentations.  Additionally, Defendants would also dispute whether the market was aware, prior to the alleged corrective disclosures, of the Company's attorney network, fee-splitting and independence issues, and whether the market considered LPS's foreclosure documentation practices to be material.  *See id*. ¶¶48, 51-52.

These issues would have been before the jury and would have required significant expert testimony and analysis.  As in any securities class action, proof of damages would have been a disputed matter subject to conflicting expert testimony, and it would not be possible to predict with any confidence how a jury would resolve such a dispute.  *See, e.g.*, *Zuckerman v. Smart Choice Auto Group, Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

As the court held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement."  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *accord Behrens*, 118 F.R.D. at 540 (approving class action

settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *see Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Because of the risks associated with continuing to litigate and proceeding to trial, including overcoming the pending motion to dismiss and likely summary judgment motions, there was a danger that Lead Plaintiff would not have prevailed against Defendants on any of its claims, in which case the Settlement Class would have received nothing.  Therefore, Lead Plaintiff's Counsel believe that the Settlement, as amended, is in the best interest of the Settlement Class.

        **2.**        **Considering the Range of Possible Recovery, the Settlement Amount is Clearly Within the Range of Reasonableness**

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'"  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined'"); *accord Behrens*, 118 F.R.D. at 541.

"[T]he Court must determine 'whether [the settlement amount] falls within the "range of reasonableness," not whether it is the most favorable possible result in the litigation.'"  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)).  As *Garst* observed:

> "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

*Garst*, 1999 U.S. Dist. LEXIS 22666, at *64-*65; *accord Sunbeam*, 176 F. Supp. 2d at 1332;

*Behrens*, 118 F.R.D. at 542.

While Lead Plaintiff's Counsel believe that the damages suffered by Settlement Class Members exceed the amount of the Settlement, the facts strongly militate in favor of approving the Settlement, as amended.   According to Lead Plaintiff's damages expert, maximum class-wide damages, assuming Lead Plaintiff is able to rely on the full stock drop for each potential corrective disclosure, are approximately $250 million.  *See* Gardner Decl. ¶56.   This figure resulted from analysis and modeling that found statistically significant declines in the value of LPS stock on days when the loss causation disclosures pled by Lead Plaintiff were made.   *Id.*   If Defendants succeed in eliminating one or more of these corrective disclosures, or in arguing that only a portion of the stock drop on one or more of the corrective disclosure dates is attributable to the alleged fraud, the class's damages will be significantly reduced.

The Amendment provides for up to $900,000 of the $14,000,000 Settlement Amount to be set aside to be used by LPS to pay and/or defend the Opt-Out Action.   If less than $900,000 is used by LPS, the amount remaining will be available for distribution to the Settlement Class.   Accordingly, the Amendment will preserve the Settlement and the Settlement Class's recovery.   If the Opt-Outs had not opted-out of the Settlement, their significant losses would have diluted the recovery of other Settlement Class Members.

Based on the Claims Administrator's review of the Opt-Outs' transactions in LPS common stock, had the Opt-Outs stayed in the Settlement Class and filed claims, Lead Plaintiff and Lead Plaintiff's Counsel believe the Net Settlement Fund would have been reduced by at least $900,000 in order to pay the Opt-Outs' claims. Thus, under the Amendment, individual Settlement Class Members will recover no less than they would have recovered under the original Settlement had the Opt-Outs participated and received at least $900,000 in payment of their claims. *Id.* ¶57.

The Settlement, as amended, therefore, represents approximately 5.25% of the maximum estimated damages amount. This percentage compares favorably with other court-approved settlements in PSLRA cases in this and other circuits. *See, e.g., Strube*, 226 F.R.D. at 698 (approving settlement equal to 2% of estimated potential recovery); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving $4.9 million settlement equal to 3% of estimated damages and noting that the "estimated recovery of three percent of the total damages estimated by the plaintiffs, does not meaningfully diverge from the range of reasonableness for settlements of similar-sized securities class actions"); *Hicks v. Morgan Stanley,* No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving $10 million settlement equal to 3.8% of damages).

Additionally, a study of securities class action settlements by NERA Economic Consulting, a firm that frequently provides damages expertise to defendants in securities cases, reported that between January 1996 and December 2012, since the passage of the PSLRA, median settlement amounts in securities class actions ranged from $3.7 million to $12.0 million. *See* Dr. Renzo Comolli *et al.*, *Recent Trends in Securities Class Litigation:*

*2012 Full-Year Review* (NERA Jan. 29, 2013) at 28, Ex. 6.   Additionally Cornerstone Research reported that approximately 79 percent of post-PSLRA settlements have settled for under $25 million.   *See* Ellen Ryan & Laurie E. Simmons, *Securities Class Action Settlements: 2012 Review and Analysis*, at 5 (Cornerstone Research 2013), Ex. 7.

Therefore, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" and this factor favors approval of the Settlement, as amended.  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

3. **The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement, as Amended**

Assuming that the Court denies Defendants' pending motion to dismiss, further litigation against Defendants would necessarily involve significant additional time and money for document and deposition discovery, expert discovery, class certification, summary judgment proceedings, trial, and possible appeals.  In light of the costs and delays inherent in litigating this case to trial, the "unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of further appellate activity if Lead Plaintiff were to prevail at trial – "the benefits to the class of the present settlement become all the more apparent."  *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (approving class action settlement after finding that although the litigation prior to the settlement "was a costly undertaking for all

parties . . . [n]evertheless, further litigation would have resulted in considerable additional expense").

A settlement at this juncture results in an immediate recovery without the considerable risk, expense, and delay of further litigation. Therefore, this factor weighs in favor of approval of the Settlement, as amended.

### 4.    The Reaction of Settlement Class Members Supports Approval of the Settlement, as Amended

The reaction of class members to a proposed settlement is a significant factor to be considered and the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement"); *Garst*, 1999 U.S. Dist. LEXIS 22666, at 71-72 ("small amount of opposition strongly supports approving the Settlement").

Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim was mailed to 67,471 potential Settlement Class Members and nominees. *See* ECF No. 105. The Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Allocation, or to Lead Plaintiff's Counsel's application for attorneys' fees and expenses. *See* ECF No. 101-2 at Exhibit A. The time to file objections to the original settlement expired on October 4, 2013. No objections were raised to any aspect of the Settlement, the Plan of Allocation, or Lead Plaintiff's Counsel's request for attorneys' fees and expenses. Four requests for exclusion were received, of which three are valid, including the request from the Opt-Outs.

16

Pursuant to the Court's Second Preliminary Approval Order, the Supplemental Notice was mailed to 71,361 potential Settlement Class Members and nominees. *See* Ex. 1 ¶¶5-8. The Supplemental Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, as amended, and that the deadline to file Proof of Claim forms had been extended to January 21, 2014. *See* Ex. 1-A. To date, no objections have been raised to any aspect of the Settlement, as amended, the Plan of Allocation, or Lead Plaintiff's Counsel's modified request for attorneys' fees and expenses.[8]

### 5.    The Stage of Proceedings Supports Approval of the Settlement, as Amended

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544. "Comprehensive discovery is not necessary, 'only some reasonable amount of discovery' is required." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *70; *accord Ressler*, 822 F. Supp. at 1555.

Here, the Settlement was reached only after Lead Plaintiff filed detailed complaints based on its comprehensive investigation, which included identifying more than 915 potential witnesses, contact with 182, and interviews with approximately 71 individuals with knowledge of the issues presented. *See* Gardner Decl. ¶¶13, 34. Also in connection with the pre-filing investigation, Lead Plaintiff thoroughly reviewed and analyzed all publicly available information regarding the Company, including, but not limited to, its SEC filings, press releases, and securities analysts' reports about LPS, as well as pleadings and documents

---

[8]    Settlement Class Members have until January 31, 2014 to object to the matters to be considered during the Settlement Hearing. Should any objections be received, they will be addressed by Lead Plaintiff's Counsel in its reply papers that will be filed on or before February 14, 2014.

from other litigation against the Company and other related individuals and entities. *Id.* Lead Plaintiff's Counsel also conducted confirmatory discovery, reviewing approximately 35,000 pages of core documents and interviewing two highly placed LPS employees who had extensive knowledge concerning the issues raised in this Action. *Id.* ¶¶13, 41.

The Amendment was reached only after extensive negotiations between Lead Plaintiff and Defendants to ensure that individual Settlement Class Members would recover no less than they would have recovered under the original Settlement had Maverick participated in the Settlement. *Id.* ¶13.

Accordingly, Lead Plaintiff and Lead Plaintiff's Counsel had a complete understanding of the facts of the case when negotiating the Settlement and Amendment, such that this factor favors approval of the Settlement. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### D. The Recommendation of Experienced Counsel Heavily Favors Approval of the Settlement, as Amended

The Court is entitled to rely on the judgment of counsel, and, indeed, "'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* at 539 (quoting *Cotton*, 559 F.2d at 1330); *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703. Lead Plaintiff's Counsel strongly endorses the Settlement, as amended. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Id.* at 703.

18

## IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties."  *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982).

The Plan of Allocation, fully described in the Notice, provides a fair and equitable method of dividing the Net Settlement Fund among Settlement Class Members who submit timely and valid Proof of Claim forms ("Authorized Claimants").  It was formulated with the assistance of a consulting damages expert who analyzed the movement of LPS's common stock after the alleged false and misleading statements made by Defendants and after the alleged corrective disclosures.  It takes into account the portion of the stock drops attributable to the alleged fraud.  The Plan of Allocation was given considerable thought and attention to assure that the net settlement proceeds would be fairly and equitably distributed based upon the amount of inflation in the prices of LPS common stock during the Class Period that was attributable to the alleged wrongdoing.  *See* Gardner Decl. ¶¶66-67.

The Plan of Allocation provides for the calculation of each claimant's "Recognized Loss," which will be calculated for each acquisition/purchase of LPS common stock made during the Class Period.  The calculation of the "Recognized Loss Per Share" will depend upon when the shares were purchased or sold, and whether it was held until the conclusion of the Class Period or, if not, when it was sold.  *Id.* ¶68.

Lead Plaintiff's Counsel believe that the Plan of Allocation set forth in the Notice is fair and reasonable, and respectfully submit that it should be approved by the Court.

## V.    CONCLUSION

For the reasons stated herein and in the Gardner Declaration, Lead Plaintiff respectfully requests that the Court (i) finally approve the proposed Settlement, as amended, as fair, reasonable, and adequate and enter the proposed Judgment; (ii) grant final certification of the Settlement Class; and (iii) enter the proposed Order approving the Plan of Allocation.  Proposed orders will be submitted with Lead Plaintiff's reply papers, after the deadline for objecting to the Settlement, as amended, has passed.

Dated: January 17, 2014

**LABATON SUCHAROW LLP**

By:  /s/ Jonathan Gardner
Jonathan Gardner
jgardner@labaton.com
Angelina Nguyen
anguyen@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiff*

**ROBBINS GELLER RUDMAN
  & DOWD LLP**
Jack Reise
Florida Bar No. 058149
jreise@rgrdlaw.com
Stephen R. Astley
Florida Bar No. 139254
sastley@rgrdlaw.com
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (561) 750-3364

*Liaison Counsel for Lead Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 17, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all counsel of record.


*/s/ Jonathan Gardner*
JONATHAN GARDNER

**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiff*